THE STATE OF CONNECTICUT *vs.* EMIL FORD.

Third Judicial District, Bridgeport, April Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

Argued April 11th—decided July 10th, 1929.

*Matthew H. Kenealy* and *Jackson Palmer,* with whom, on the brief, were *C. Milton Fessenden* and *Daniel E. Ryan,* for the appellant (the accused).

*Lorin W. Willis,* Assistant State's Attorney, with whom, on the brief, was *William H. Comley,* State's Attorney, for the appellee (the State).

BANKS, J. The accused contends that the evidence produced upon the trial did not establish his guilt beyond a reasonable doubt. He has followed the procedure outlined in *State* v. *Frost,* 105 Conn. 326, 135 Atl. 446, and assigned this reason of appeal and that the subordinate facts do not support the conclusion of the court, also claiming that the finding should be corrected by striking out certain paragraphs and adding paragraphs of the draft-finding. The claim is made that certain facts were found without evidence and that certain admitted or undisputed facts were not found.

The State claimed that Shirley Trine came to her death by being struck by an automobile which was being operated by the defendant in a grossly reckless and negligent manner. That is found in paragraph fifteen of the finding, which is in reality a conclusion from the subordinate facts and will be treated as such. As to the subordinate facts, there was actually little dispute and the court could reasonably have found and did find them as follows: At about 8:15 on the evening of September 19th, 1928, the bodies of two girls were found upon the concrete pavement of Sound Beach Avenue, Greenwich, about seventy-five feet south of the corner of Vista Avenue. Both of the girls

were injured by having been struck from behind by some moving object and one of them, Shirley Trine, died shortly thereafter. The girls had been walking in a southerly direction along the westerly edge of the concrete pavement of the road, there being no sidewalk at that point. Neither of them saw what struck them nor did they hear or have any warning of an approaching automobile. In the road about fifty feet south of Vista Avenue were found pieces of glass from an automobile headlight, and about twenty-five feet south of the glass there were two blood stains, one six and one seven and a half feet from the westerly edge of the concrete pavement. It had been a day of violent rain and wind and was raining slightly at the time of the accident. There was an incandescent street light at the corner of Sound Beach Avenue and Vista Avenue which was lighted, and there were several large shade trees on the west side of the street which cast shadows on the roadway. On the west side of Sound Beach Avenue just south of the corner of Vista Avenue there was a large puddle of water and mud about twenty-five feet long extending about five feet into the highway. About twelve minutes past eight the accused was seen driving a Ford car at a moderate rate of speed southerly on Sound Beach Avenue about three quarters of a mile north of the scene of the accident, and about fifteen minutes past eight was seen driving his car from Sound Beach Avenue into the Shore Road about three hundred yards south of the scene of the accident with the glass of his right headlight broken. On the following morning his car was found in his garage with the glass of the right headlight shattered, the radiator slightly bent back and a small dent in the hood. One of the pieces of glass found at the scene of the accident exactly fitted into the broken and irregular edge of a piece of

similar glass still remaining in the rim of the right headlight of the car. There was a conflict in the evidence as to whether the street light at the corner was lighted at the time of the accident, and the finding that it was lighted must stand. As to the other subordinate facts there was no serious dispute. Counsel for the accused concede that the subordinate facts support the conclusion of the trial court that the death of Shirley Trine was caused by coming into contact with the car of the accused. They strenuously contend that they do not support its conclusion that her death was caused by the gross negligence of the accused in the operation of the car and that the evidence failed to establish that fact beyond a reasonable doubt. Another fact which, though not expressly found, is an obvious and necessary conclusion from the facts found, is that the accused, after striking these girls, continued on his way leaving the bodies of the two girls lying in the road. It is also found that upon the trial the accused did not take the stand as a witness, and the court states its conclusion that this failure of the accused to testify under the circumstances disclosed by the evidence, was a fact which it could not dismiss from its mind, and which strengthened the court's conclusion that the accused was guilty beyond a reasonable doubt.

The court found that the accused was guilty of gross negligence. Such a finding, as in the case of a finding of ordinary negligence by the court or jury, is as a general rule conclusive unless unsupported by facts or resulting from the application of an incorrect rule of law or standard of conduct. The record does not indicate that the trial court failed to apply the correct standard of conduct in reaching its conclusion that the car of the accused was operated in a grossly reckless and negligent manner, nor is this conclusion

unsupported by the subordinate facts found. The assignment of error that the subordinate facts do not support the conclusion of the court must therefore fail.

The principal ground of appeal is that the evidence does not establish the guilt of the accused beyond a reasonable doubt. Though we are not confined to the finding of facts in our consideration of this ground of appeal, there is, as already stated, no serious dispute that the essential facts are as above narrated. The only testimony as to the occurrences at the precise moment that the girls were struck was that of the survivor of them, who testified that they were walking south on the right-hand side of the road and that just as they were passing under the street light near the corner of Vista Avenue they were struck by something. That it was the car of the accused that struck them is demonstrated by the evidence as to his movements, the shattered headlight of his car and the fact that the piece of glass found in the street exactly fitted into the edge of a piece of similar glass in the rim of the headlight. The concrete roadway was thirty feet wide and there was no traffic upon it other than defendant's car. There was no sidewalk at this point and the defendant who lived in the neighborhood might reasonably have expected the presence of pedestrians upon the westerly edge of the concrete road where these girls were walking and where he was operating his car. The car came upon them from behind without warning of any kind, and there is no indication that the accused saw them, as he should have done had he been keeping a reasonable lookout, or, if he did, made any effort to warn them of their danger or to avoid striking them. The damage to the car of the accused and the location of blood stains and of the bodies of the two girls upon the concrete pavement

seventy-five feet from the corner of Vista Avenue are indicative of the speed at which the car of the accused must have been traveling when it struck these girls. The conduct of the accused in leaving the bodies of the girls lying in the road while he sped on with his car was not only reprehensible in the extreme but may be considered by the trier in determining his guilt since it tends, unexplained, to prove a consciousness of guilt. *People* v. *Anderson,* 57 Cal. App. 721, 208 Pac. 204; *State* v. *Hairston,* 182 N. C. 851, 109 S. E. 45; 1 Wigmore on Evidence (2d Ed.) § 276.

The fact that the accused did not take the stand as a witness in his own defense strengthened the conclusion of the trial court that he was guilty beyond a reasonable doubt and the accused claims that the court erred in taking that fact into consideration in weighing the evidence as to his guilt or innocence. The common-law maxim *nemo tenetur seipsum accusare* has been incorporated in the constitutions of nearly every State and appears in our Declaration of Rights in the provision that an accused "shall not be compelled to give evidence against himself." Conn. Const., Article First, § 9. The history of the development of the privilege discloses that the object sought to be attained thereby was the prevention of the employment of legal process to extract from the person's own lips an admission of his guilt which would then take the place of other evidence. See 4 Wigmore on Evidence (2d Ed.) p. 863, § 2263. This privilege of an accused has been supplemented and extended by statutory or constitutional provisions in nearly every jurisdiction restricting the right of the court or counsel or both to comment upon the failure of the accused to testify, and in many jurisdictions providing that no inference prejudicial to the accused shall be drawn from such failure. Between 1867 and 1879 our statute

read: "Nor shall such neglect be alluded to, or commented upon by the prosecuting attorney, or by the court." This was repealed in 1879, since when our statute has read as follows: "The neglect or refusal of an accused party to testify shall not be commented upon to the court or jury." General Statutes, § 6634, as amended by Public Acts of 1919, Chap. 89. As we pointed out in *State* v. *Colonese*, 108 Conn. 454, 463, 143 Atl. 561, the statute does not require or suggest a charge to the jury that no opinion prejudicial to the accused shall be drawn from his failure to testify, since such requirement is not within its letter or intent nor does it forbid the jury to draw its own conclusion from this circumstance. In the *Colonese* case the court charged the jury that no opinion prejudicial to the accused could be drawn from his failure to testify. The accused in that case was found guilty and this portion of the charge was not questioned upon the appeal.

Here the question is squarely raised by the statement of the trial court in the finding that in reaching its conclusion that the accused was guilty, it took into consideration his failure to testify and this is assigned as one of the grounds of error. We reaffirm what we said upon this point in the *Colonese* case. It has been argued that, independent of statutory provision, an accused is entitled to a ruling that no inference prejudicial to him shall be drawn from his failure to testify, since otherwise it will become practically obligatory upon him to testify and he will be deprived of his constitutional privilege. The constitutional privilege goes no further historically or logically than to prevent the employment of legal process to compel an accused to incriminate himself by what he may say upon the witness stand. He cannot be compelled to testify against his will. The privilege of refraining from tes-

tifying, if he so elect, does not protect him from any unfavorable inference which may be drawn by his triers from his exercise of the privilege. The failure of one charged with the commission of a crime to deny the performance of the acts attributed to him is logically relevant to the issue of his guilt or innocence. At all events no court or jury can fail to give some weight, more or less according to the circumstances of the case, to such conduct of an accused. It is a fact in the case which is obvious and no statute or ruling of the court can prevent the trier as a general rule from drawing inferences from that fact. Not only is the inference an almost inevitable one, but permitting it to be drawn is not a violation of the constitutional privilege. There is no actual compulsion upon the accused to testify and when he elects not to do so he is obviously not being compelled to give evidence against himself. He is a competent witness in the case and any inference drawn from his failure to testify is that which always arises from the non-production of a competent witness. In jurisdictions where the statute provides that no inference prejudicial to the accused shall be drawn from his failure to testify he is undoubtedly entitled to an instruction to the jury to that effect. This is, however, an extension of the common law and constitutional privilege beyond its original limits. The real object of criminal procedure has been said to be "the conviction of the largest possible proportion of guilty men that is compatible with the certainty of acquittal of the innocent." Leading publicists and jurists hold that the privilege of the accused not to testify is not in accord with this theory and is a legal survival that has lost the reason for its existence. The requirement that no inference prejudicial to the accused shall be drawn from his failure to testify has still less support in reason under modern

trial conditions, and if juries felt bound by instructions to that effect, would increase the difficulty in convicting the guilty. In the absence of controlling statutory provisions the accused is not entitled to an instruction that no opinion prejudicial to him shall be drawn from his failure to testify, and, in a trial to the court, such inference may be drawn by the trial judge. *State* v. *Bartlett,* 55 Me. 200, 220; *State* v. *Cleaves,* 59 Me. 298, 300; *State* v. *Pearce,* 56 Minn. 226, 57 N. W. 652, 1065; *State* v. *Callahan,* 77 N. J. L. 685, 73 Atl. 235; *State* v. *Bien,* 95 N. J. L. 474, 113 Atl. 248; *Phillips* v. *Chase,* 201 Mass. 444, 450, 87 N. E. 755; see 4 Wigmore on Evidence (2d Ed.) pp. 829, 830, § 2250.

Counsel for the accused contend that his failure to testify may be used by the court or the jury as the basis of an inference of guilt only when the State has already produced sufficient evidence, apart from such inference, to warrant a finding of guilt beyond a reasonable doubt. The fact that an accused has chosen not to take the stand is a fact in the case which the jury are entitled to treat as they treat any fact established by the evidence, giving it more or less weight as the circumstances may justify. The contention of counsel would deprive it of any weight whatever. It is equivalent to saying that a fact which is relevant to a fact in issue may not be considered by the trier until the fact in issue has already been proven by other evidence, in other words, until it is no longer of any importance. The result of such procedure would not differ perceptibly from that attained by denying the right of the trier to draw any inference from the failure to testify. In *State* v. *Bartlett,* 55 Me. 200, the trial judge had charged the jury that the State was obliged to establish the guilt of the accused independent of any inference from his failure to testify, and

the court said (p. 220): "We regard it [the failure to testify] a fact in the case, proper for the consideration of the jury, upon the question of guilt or innocence, and if, when a cause is submitted to the jury, the facts proved in the case, combined with this fact, satisfies them beyond a reasonable doubt of the guilt of the prisoner, their verdict should be guilty. . . . The presiding judge in this case . . . deprived the government of the whole force of the fact, by requiring it to prove all that was necessary for a conviction without it."

Upon all the evidence in the case, including the fact that the accused failed to testify on his own behalf, we cannot say that as a matter of law the trial court was not justified in finding the accused guilty beyond a reasonable doubt.

There is no error.

In this opinion the other judges concurred.