STATE OF CONNECTICUT *v.* ALFRED R. SZABO

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued March 7—decision released April 16, 1974

*Thomas A. Bishop,* for the appellant (defendant).

*Edmund W. O'Brien,* state's attorney, for the appellee (state).

HOUSE, C. J. On a jury trial, the defendant, Alfred R. Szabo, was found guilty of the crime of theft of a motor vehicle in violation of § 53-57 of

the General Statutes. The sole issue presented on his appeal to this court is whether the trial court erred in admitting into evidence the testimony of a police officer as to the defendant's statement that he was the operator of an automobile, subsequently determined to have been stolen, made at a time when the defendant had not been warned of his constitutional rights. It is the contention of the defendant that the decision of the United States Supreme Court in *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, required the exclusion of the defendant's statement.

The facts are not in dispute. At approximately 11:30 p.m. on October 4, 1970, Patrolman Raymond D. Flinn of the Groton police department received a call from police headquarters to assist another police officer at an automobile accident in the vicinity of Packer Road in Groton. Upon his arrival at the scene, Flinn observed a late model Pontiac with its front end against a telephone pole with which the Pontiac had apparently collided. A man subsequently identified as the defendant suddenly exited from the driver's side of the vehicle, proceeded around the rear of the automobile and ran in a northerly direction across a field. Flinn left his patrol car and pursued the defendant on foot. At approximately the same time that Flinn arrived at the scene, Officer Spencer A. Havey, who had been directed by the Groton police dispatcher to investigate the accident, also arrived, saw the Pontiac against the telephone pole, saw Flinn running into a wooded area and joined in the pursuit. Havey spotted the defendant lying face down in a gully, but the defendant got up, ran, and then fell down when Havey told him to halt. When Havey approached the defendant, the latter attempted to

shove him and Havey then handcuffed the defendant and began to examine him for injuries. To Flinn, the defendant appeared ill and semiconscious, and an ambulance was called. Havey, assisted by Flinn and a state police officer, brought the defendant out of the gully to an embankment where Flinn waited with him for the arrival of the ambulance. When the ambulance arrived, Flinn was ordered to proceed with the defendant in the ambulance to the hospital and to wait there for further orders. While waiting for the ambulance, Flinn attempted to gather information about what actually happened in the accident, and, en route to the hospital, Flinn continued a routine inquiry of what had caused the accident. His questions were typical of those asked of any participant in a motor vehicle accident to determine what had transpired.

Flinn did not know that the Pontiac had been stolen and did not advise the defendant that he had the right to remain silent and the right to counsel and that any statement made by him could be used as evidence against him. See *Miranda* v. *Arizona,* supra, 478–79. During the course of the questioning, the defendant said that he was the driver of the automobile, and that he had blacked out before striking the telephone pole. In the ambulance, the defendant complained of chest pains, was very pale, vomited and was "obviously in trouble." Upon arrival at the hospital, the defendant received emergency treatment and was placed in the intensive care unit. The admitting diagnosis was "Coronary," and it was determined that the defendant had suffered a severe heart attack. Except for the period of emergency treatment, Flinn remained with the defendant continuously until approximately 8 o'clock the next morning as he had been instructed,

but he did not question the defendant further. At no time at the scene of the accident, during the ambulance ride or during the night at the hospital was the defendant placed under arrest.

In the absence of the jury, the court heard Flinn's testimony and concluded that Flinn was not required to give the *Miranda* warnings to the defendant as part of his on-the-scene investigation. See note, 25 A.L.R.3d 1076. The defendant fully protected his claim for the exclusion of Flinn's testimony regarding the defendant's inculpatory admission by proper objection and exception to the court's ruling.

In *Miranda* v. *Arizona,* supra, the court held that the fifth amendment to the constitution of the United States, which accords an individual the privilege against self-incrimination, requires that substantive and procedural safeguards surround the "in-custody interrogation of persons suspected or accused of crime." Id., 467. The fifth amendment is made applicable to the states by the provisions of the fourteenth amendment. *Miranda* v. *Arizona,* supra, 463–64; *Malloy* v. *Hogan,* 378 U.S. 1, 8, 84 S. Ct. 1489, 12 L. Ed. 2d 653. The pivotal question is whether Flinn's inquiries in the ambulance regarding the circumstances of the accident amounted to "custodial interrogation," which the court in *Miranda* defined as (p. 444) "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.[4]" In the footnote referred to, the court stated: "This is what we meant in *Escobedo* [v. *Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977] when we spoke of an investigation which had focused on an accused." The court emphasized (p. 445) that *Miranda* and its

companion cases shared certain "salient features—incommunicado interrogation of individuals in a police-dominated atmosphere, resulting in self-incriminating statements without full warnings of constitutional rights" distinguishable from routine investigatory information-gathering. The court said: "General on-the-scene questioning . . . of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." *Miranda* v. *Arizona,* 384 U.S. 436, 477–78, 86 S. Ct. 1602, 16 L. Ed. 2d 694.

Upon the facts in this case and the applicable law, we conclude that Flinn's questioning of the defendant was not within the proscriptive demarcations of the *Miranda* principles. The defendant was neither arrested nor restrained for police purposes. Officer Flinn was not aware that the car had been stolen, and his investigation of the accident had not focused upon the defendant as an accused. His confinement in the ambulance and in the hospital intensive care unit was due, not to police restriction, but to his precarious medical condition.[1] Accordingly, the basic police custodial and accusatory elements present in the *Miranda* case were not present here. See *Posey* v. *United States,* 416 F.2d 545, 550 (5th Cir.),

---

[1] The defendant's hospital record states, in part: "Admission date: October 5, 1970. Time of admission: 12:30 A.M. Admitting diagnosis: Coronary. Final diagnosis: Arteriosclerotic heart disease, acute myocardial infarction. Cardiogenic shock. Congestive heart failure. History: A forty-five year old white male was brought to the emergency room, found to be pulseless and without blood pressure. He was admitted to the intensive care room in critical condition."

cert. denied, 397 U.S. 946, 90 S. Ct. 964, 25 L. Ed. 2d 127, rehearing denied, 397 U.S. 1031, 90 S. Ct. 1267, 25 L. Ed. 2d 544; *Lamb* v. *United States,* 414 F.2d 250, 251 (9th Cir.); *Johnson* v. *State,* 252 Ark. 1113, 1121, 482 S.W.2d 600; *Tillery* v. *State,* 3 Md. App. 142, 146–47, 238 A.2d 125; *People* v. *Gilbert,* 8 Mich. App. 393, 397–98, 154 N.W.2d 800; *State* v. *Zucconi,* 50 N.J. 361, 364, 235 A.2d 193; 4 Wharton, Criminal Evidence (13th Ed.) § 717, p. 30; note, 31 A.L.R.3d 565, 622–25.

Since the police were unaware that a crime had been committed, they had not yet shifted from their investigation of a relatively routine mishap to accusatorial criminal police work or focused upon the defendant as a potential target of criminal allegations. We conclude that the trial court properly held that under the circumstances the *Miranda* warnings were not required. *Escobedo* v. *Illinois,* 378 U.S. 478, 492, 84 S. Ct. 1758, 12 L. Ed. 2d 977; *United States* v. *Quinones-Gonzalez,* 452 F.2d 964, 965 (10th Cir.); *United States* v. *Lacy,* 446 F.2d 511, 512 (5th Cir.); *Commonwealth* v. *Cutler,* 356 Mass. 245, 246–47, 249 N.E.2d 632; *State* v. *Hoskins,* 292 Minn. 111, 127–29, 193 N.W.2d 802; *Commonwealth* v. *Frye,* 433 Pa. 473, 480, 252 A.2d 580, cert. denied, 396 U.S. 932, 90 S. Ct. 273, 24 L. Ed. 2d 231; note, 25 A.L.R.3d 1076, 1082–86.

There is no error.

In this opinion the other judges concurred.