STATE OF CONNECTICUT *v.* FRANCIS FERRARA

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued November 15, 1978—decision released January 23, 1979

*Gerald E. Farrell,* special public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Richard P. Sperandeo,* chief assistant state's attorney, for the appellee (state).

LONGO, J. The defendant, Francis Ferrara, was indicted by a grand jury and charged with murder, in violation of § 53a-54a of the General Statutes, to which offense he pleaded not guilty. His jury trial in the Superior Court resulted in a conviction of manslaughter in the first degree, based on the defendant's part in the knife slaying of Martin R. Blizzard on the night of December 31, 1973. The trial court denied the defendant's motion to set aside the verdict, rendered judgment of guilty, and sentenced the defendant to serve a term of not less than eight nor more than twenty years in prison. The defendant has appealed to this court from the judgment rendered, and in his preliminary statement of issues has assigned as error the following: the court's charge to the jury relating to the testimony of an alleged accomplice; the denial of the defendant's motion for a mistrial; the court's charge to the jury relating to flight; and the denial of the defendant's motion to suppress statements to the police while being transported.

From the evidence presented the jury could have found the following: On December 31, 1973, the deceased, Martin R. Blizzard, was stabbed to death while fleeing from a party at an apartment following a fight between himself and Michael Pollatto, who was stabbed several times by Blizzard. After Blizzard was forcibly ejected from the apartment, James

Pollatto, the brother of Michael Pollatto, stated that he was going to kill Blizzard and then ran out the door. James Pollatto was followed out the door by the defendant Ferrara. Initially, Pollatto caught up with the deceased and began to struggle with him. The defendant then arrived, joined the fray and stabbed the deceased in the chest. Immediately following the stabbing, the defendant Ferrara had a conversation with Michael Pollatto in a bar, in which he stated that he (the defendant) had "stabbed him [the deceased] fourteen to twenty times."

At the time of the defendant's trial, Pollatto had been charged with manslaughter in connection with Blizzard's death, but had not been charged as an accomplice of the defendant. There was evidence of a possible agreement between Pollatto and the defendant to cover up the crime. The defendant Ferrara left Connecticut in April, 1975, shortly before his indictment for the murder of Martin Blizzard, and voluntarily returned to Connecticut and surrendered to the Federal Bureau of Investigation (hereinafter the F.B.I.) on January 1, 1977.

## I

The defendant first claims that the court erred in granting, over his objection, the state's motion to charge the jury on the law pertaining to accomplices.[1] He argues that the case had been tried on

---

[1] "[General Statutes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

The court charged the jury, in pertinent part, as follows: "[I]f you find that two or more persons were involved here, that they

the basis that either he *or* James Pollatto inflicted the knife wounds upon the victim causing his death; that the simple mention of Pollatto as an accomplice prejudiced the defendant in his ability to defend against the charges; and that where there is only one defendant charged in the indictment, as here, it is error to give the accomplice charge over his objection. We do not agree.

The defendant's argument is in direct conflict with our recent statement that, where warranted by the evidence, it is the court's *duty* to caution the jury as to the testimony of an accomplice in its charge. In *State* v. *Carey,* 76 Conn. 342, 349, 56 A. 632 (1904), we stated: "The conditions of character and interest most inconsistent with a credible witness, very frequently, but not always, attend an accomplice when he testifies. When those conditions exist, it is the *duty* of the judge to specially caution the jury." (Emphasis added.) *State* v. *Colton,* 174 Conn. 135, 140, 384 A.2d 343 (1977); see *Bruton* v. *United States,* 391 U.S. 123, 136, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968); *United States* v. *Leonard,* 494 F.2d 955, 959–60 (D.C. Cir. 1974). The relevant "conditions of character and interest" in the present case were the fact that James Pollatto was a witness charged with manslaughter in Blizzard's death and the fact that possible interest in receiving favorable consideration and treatment for his testimony tended to incriminate the defendant. See *State* v. *Colton,* supra, 140–41. Moreover, as we stated in *State* v. *Bennett,* 172 Conn. 324, 335, 374

were accomplices or accessories one under the other, I will give you this word of caution, that the law says ordinarily you should view the testimony of an accomplice with caution . . . . And so, if you find that someone testified here who might also be involved in the case and might have his own reasons for testifying, that testimony should be examined very carefully."

A.2d 247 (1977): "It is well settled law that '[t]he fact that the witness is a defendant in a criminal prosecution, or is a participant in the offense or in a related offense, creates an interest which affects his credibility.'" 81 Am. Jur. 2d, Witnesses, § 667; see *Wilson* v. *United States*, 162 U.S. 613, 16 S. Ct. 895, 40 L. Ed. 1090 (1896); *Valdez* v. *United States*, 244 U.S. 432, 37 S. Ct. 725, 61 L. Ed. 1242 (1917); *People* v. *Northcott*, 209 Cal. 639, 289 P. 634 (1930).

Although we agree with the defendant that customarily it is the accused who has an interest in seeing that the testimony of an accomplice is given special scrutiny, we reiterate that, where it is warranted by the evidence, it is the *court's duty* to caution the jury to scrutinize carefully the testimony if the jury find that the witness intentionally assisted in the commission, or if he assisted or aided or abetted in the commission, of the offense with which the defendant is charged. We are satisfied that, from the following evidence adduced at the defendant's trial, the jury could reasonably have found that Pollatto was an accomplice or aided and abetted the defendant in committing the offense of manslaughter. There was testimony that Pollatto's brother was stabbed by Blizzard, the deceased, in the fight at the party and, therefore, Pollatto had a reason for attacking Blizzard; that Blizzard, the defendant and Pollatto were at the scene of the crime together; that Pollatto had the victim's blood on his clothing; that Pollatto had threatened to kill Blizzard, and that he was seen running away from the scene of the crime. Under such circumstances, we conclude that the court did not err in charging the jury on the law in the manner complained of even though Pollatto was not charged with aiding or abetting and did not admit that he committed the

offense with which he was charged in his own information.[2]  See *State* v. *Ives,* 172 Conn. 322, 323, 374 A.2d 244 (1977); *State* v. *Rosa,* 170 Conn. 417, 434, 365 A.2d 1135 (1976); *State* v. *Raffone,* 161 Conn. 117, 285 A.2d 323 (1971).

## II

The defendant Ferrara next claims that the court erred in denying his motion for a mistrial for the failure of the state to disclose an understanding with its main witness, James Pollatto, concerning his future prosecution for manslaughter arising from Blizzard's death.  The facts pertinent to this claim are as follows:  The record discloses that after the close of evidence, defense counsel learned that a hearing had been held in a prosecution by the state of James Pollatto in which the state had indicated that its then intention was not to proceed against Pollatto on manslaughter charges for his part in the knifing of Martin Blizzard because of a lack of evidence.  The defendant asserts that the state's intention not to prosecute was, in effect, a "deal" arranged with Pollatto whereby he

---

[2] Two further points should be noted.  The defendant did not print in his brief his request to charge on the law of "accomplices"; neither did the defendant print the charge that the trial court *did* give, both of which are required by the rules of practice, effective July 1, 1978, § 3054 (c) (1).  Our consideration of the defendant's present argument is, to this extent, somewhat hampered.

The defendant also claims that the trial court erred in giving an "accessory" charge; General Statutes § 53a-8; when the state had not charged him with "aiding and abetting" in the indictment.  The simple answer to this argument is that the propriety of a charge on "aiding and abetting" is predicated on the basis of the sufficiency of the evidence heard during the course of the trial, *not* on the mention of such charges in pretrial documents.  See *State* v. *Ives,* 172 Conn. 322, 323, 374 A.2d 244 (1977); *State* v. *Raffone,* 161 Conn. 117, 128, 285 A.2d 323 (1971); *State* v. *Cianflone,* 98 Conn. 454, 466, 120 A. 347 (1923); *State* v. *Burns,* 82 Conn. 213, 218-19, 72 A. 1083 (1909); *State* v. *Hamlin,* 47 Conn. 95, 120 (1879).

would testify against the defendant in exchange for the state's promise not to prosecute, and that this "deal" should have been disclosed to the defendant under the principles enunciated in *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and *Napue* v. *Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959).[3] Absence of disclosure, asserts the defendant, not only precluded effective cross-examination of Pollatto at trial, but violated the defendant's right to a fair trial guaranteed by the state and federal constitutions. We have reviewed the record in this case and have concluded that neither *Brady* nor *Napue* control; neither do we find that the evidence in the record discloses the existence of any "promise" or "deal" between Pollatto and the state relative to Pollatto's testimony against the defendant.

At the defendant's trial, both Pollatto and the state emphatically denied that any understanding had been arranged relative to Pollatto's testimony.[4]

[3] In *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused *on request* violates due process where the evidence is material either to guilt or punishment. See *State* v. *Grayton*, 163 Conn. 104, 108, 302 A.2d 246 (1972), cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495 (1972). In *United States* v. *Agurs*, 427 U.S. 97, 112, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976), the Court refined the *Brady* doctrine by holding that, absent a defense request for exculpatory materials, nondisclosure of "material" evidence would be error only if the evidence creates a reasonable doubt as to guilt which would not otherwise exist. In *Napue* v. *Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959), the Court held that the failure of a prosecutor to correct the testimony of a witness which he knew to be false denied a criminal defendant due process of law in violation of the fourteenth amendment.

[4] "[Richard P. Sperandeo, chief assistant state's attorney.] I have made no promises to Mr. McQuade [defense counsel] or to Mr. Pollatto for his testimony. He is going to testify for the state as the

The record before us supports this testimony. At best, the record indicates that the state, prior to Ferrara's trial, merely disclosed an intention not to prosecute Pollatto at that time, and that Pollatto and his defense counsel were aware of this intention. We reject the defendant's argument that, on the facts of this case, the state's "intention" not to prosecute falls within the ambit of the *Brady* principle that evidence favorable to an accused must be disclosed. Neither is there any indication that Pollatto's testimony that he received "no promises" from the state was false. Pollatto's attorney was merely told that the state had insufficient evidence to prosecute within the time period required by the rules concerning speedy trials. Under these circumstances, *Napue* is inapposite.

One further point remains. The record does not disclose that the defendant ever made a written motion for exculpatory information or material, as required by Practice Book, 1963, § 2152 (1). Notwithstanding this, the defendant did learn of the purported "understanding" between Pollatto and the state at the trial after the close of evidence, but rejected the prosecution's offer to inform the jury again that the state did not intend proceeding with the manslaughter charge against Pollatto, to read portions of the transcript to the jury to clear up any possible misunderstandings and, finally, to fly Pollatto from North Carolina to Connecticut in order that Pollatto could be cross-examined by the defendant as a hostile witness concerning any promises made to him. The court informed defense counsel that he would be entitled to argue to the jury the

state's witness. And I have, as I say, made no promises to him. But, based upon my evidence, I do not intend to press my charge of manslaughter against him."

matter of possible motive or bias on the part of Pollatto. The court, however, found that no promises had been made to Pollatto and denied the defendant's motion for a mistrial.

In the light of our discussion above, we find no error in the court's denial of the defendant's motion for a mistrial. "The general principle is that a mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial." *Ferino* v. *Palmer,* 133 Conn. 463, 466, 52 A.2d 433 (1947); *State* v. *Paluga,* 171 Conn. 586, 599, 370 A.2d 1049 (1976); see *State* v. *Adams,* 176 Conn. 138, 145–46, 406 A.2d 1 (1978). The trial court was evidently of the opinion, in which we concur, that the defendant had received a fair trial; in this opinion, and the resulting denial of the defendant's mistrial motion, the court did not abuse the wide discretion it possesses in passing on motions for mistrial. *State* v. *Savage,* 161 Conn. 445, 449, 290 A.2d 221 (1971).

### III

The defendant next contends that the trial court erred in allowing evidence of, and in charging the jury on, flight.[5] Flight, when unexplained, tends to prove a consciousness of guilt. *State* v. *Beaulieu,* 164 Conn. 620, 632, 325 A.2d 263 (1973); *State* v. *Miller,* 154 Conn. 622, 628, 228 A.2d 136 (1967); *State* v. *Ford,* 109 Conn. 490, 496, 146 A. 828 (1929).

---

[5] The court charged the jury, in relevant part, as follows: "Mention was made that he [the defendant] left the state of Connecticut and went to various parts of the country. There is a doctrine of law on that score that if you find that a person has fled to avoid prosecution, that is a factor to be considered by you and to be given such weight as you desire to give it as bearing upon the consciousness of guilt. This is what we call an admission by conduct, which you

"The flight of the person accused of crime is a circumstance which, when considered together with all the facts of the case, may justify an inference of the accused's guilt. It does not raise a presumption of guilt." 1 Wharton, Criminal Evidence (13th Ed. Torcia) § 143; accord, 2 Wigmore, Evidence (3d Ed.) § 276; McCormick, Evidence (2d Ed.) § 271 (c); see annot., 25 A.L.R. 886. Flight may be established by proof of the efforts of the police to locate the defendant; see *United States* v. *Waldman,* 240 F.2d 449, 452 (2d Cir. 1957); and the vain efforts of police to find a defendant may tend to show that the defendant intended to elude them. *Kanner* v. *United States,* 34 F.2d 863, 866 (7th Cir. 1929); 29 Am. Jur. 2d, Evidence, §§ 280, 281. Such proof, however, must be supported by either direct or inferential evidence that the defendant knew he was wanted by the police. *State* v. *Mayell,* 163 Conn. 419, 425, 311 A.2d 60 (1972).

Within the above context, the trial court heard the following evidence upon which it charged the jury relative to the defendant's absence from the state of Connecticut after the death of Martin Blizzard on December 31, 1973. Within six weeks after Blizzard's death a conversation occurred between the defendant and Pollatto discussing "ways to get each other off." The defendant had become aware that Pollatto had already given a statement to the police implicating the defendant, who told Pollatto "not to put any heat on him." The defendant told

---

may weigh and give it what value you think it deserves. The Supreme Court said in a recent case on that score that flight may be established by proof of the efforts of police to locate the defendant. Such proof, however, must be supported by direct or inferential evidence that the defendant knew he was wanted by the police. If you find he left the state to avoid prosecution under those terms, that you must weigh as part of the whole picture as to innocence or guilt."

two acquaintances that he was going to turn himself in within two or three days. He also told them that he was not going to let Pollatto, who had already been arrested, "take the rap" for him for the killing. The defendant told Michael Pollatto, within days of the arrest of James Pollatto, that he (the defendant) would not let James Pollatto take the rap and that something would be worked out. At the time the defendant left the state, he had already received a grand jury subpoena requesting his presence for questioning relative to the death of Martin Blizzard. The defendant spoke with his father by telephone approximately five times during his two-year absence concerning the events transpiring in the state. A police officer testified that when he picked the defendant up at the New Haven F.B.I. office, the defendant stated to him that he had been "on the run" and had traveled as far west as California. Finally, the court and jury heard testimony relating to the efforts of the F.B.I. and the police to locate the defendant.

We find that the court was correct in admitting this evidence, and, in view of the evidence, allowing the case to go to the jury on the issue whether the defendant exhibited a "consciousness of guilt" and thus fled the jurisdiction. There was ample evidence that the defendant knew he was "wanted by the police"; *State* v. *Mayell,* supra; and that he had absented himself from the state to avoid apprehension. We find no error in the charge given by the court relative to the issue of flight. See *State* v. *Rosa,* supra, 432 n.8.

## IV

Finally, the defendant claims that his fifth amendment rights against self-incrimination were violated

when the trial court denied his motion to suppress, as the fruit of questioning not preceded by the warnings required in *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), a conversation with a police officer while being transported from the F.B.I. office in New Haven to Meriden for processing following his return to Connecticut. The record discloses the following circumstances: The defendant had been given the *Miranda* warnings at the F.B.I. office and again by a Meriden police officer, and had made no statement to anyone. During the ride to Meriden the officer commented that the accused had nice parents. Ferrara said "Yes," and added that "he had come back to straighten things out even if he had to do some time in jail." This testimony was given outside of the jury's presence. The court, after arguments, decided that the defendant's statement was voluntary and admitted the testimony over the defendant's objection.

At the outset, we note that *Miranda* requires warnings to combat a situation in which there are "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so." *Miranda* v. *Arizona,* supra, 467; *United States* v. *Washington,* 431 U.S. 181, 186, 97 S. Ct. 1814, 52 L. Ed. 2d 238 (1977). The defendant's position seems to be that it was incumbent upon the state at trial to prove an intentional and knowing waiver by the defendant of his right to remain silent while in police custody. See *Johnson* v. *Zerbst,* 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). Under the circumstances of this case, such a claim is without merit. It is now well settled that incriminating statements made by a defendant are admissible in evidence whether or not the *Miranda* warning has been given when the

statements were not made during the course of a "custodial interrogation."[6] *State* v. *Smith,* 174 Conn. 118, 121, 384 A.2d 347 (1977). Thus, absent a custodial interrogation, the defendant enjoyed no right which could be the subject of a "waiver."

Notwithstanding the above, the defendant contends that it was improper conduct on the part of the officer to engage the defendant in a seemingly innocent conversation and then to allow the state to introduce as evidence any admission made by the defendant without the presence of counsel and without proof of a knowing waiver. Under the circumstances presented by the record, we find no merit to those claims. While we may agree that the defendant was "in custody" at the time of the conversation; see *Oregon* v. *Mathiason,* 429 U.S. 492, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977); the record

---

[6] The United States Supreme Court defined that term in *Miranda* v. *Arizona,* 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966): "By custodial interrogation, we mean *questioning* initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (Emphasis added.) The principle referred to in the text has repeatedly been affirmed by decisions of the United States Supreme Court, most recently in *United States* v. *Washington,* 431 U.S. 181, 97 S. Ct. 1814, 52 L. Ed. 2d 238 (1977); *Oregon* v. *Mathiason,* 429 U.S. 492, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977); *Beckwith* v. *United States,* 425 U.S. 341, 96 S. Ct. 1612, 48 L. Ed. 2d 1 (1976); *Michigan* v. *Tucker,* 417 U.S. 433, 94 S. Ct. 2357, 41 L. Ed. 2d 182 (1974); cf. *Brewer* v. *Williams,* 430 U.S. 387, 400, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977); by decisions of the Second Circuit Court of Appeals; see *United States ex rel. Sanney* v. *Montanye,* 500 F.2d 411 (2d Cir. 1974); *United States* v. *Hall,* 421 F.2d 540 (2d Cir. 1969); and by our own decisions; see *State* v. *Bennett,* 171 Conn. 47, 368 A.2d 184 (1976); *State* v. *Schaffer,* 168 Conn. 309, 314, 362 A.2d 893 (1975); and *State* v. *Szabo,* 166 Conn. 289, 348 A.2d 588 (1974); cf. *State* v. *Adams,* 176 Conn. 138, 145–46, 406 A.2d 1 (1978); see also discussions in annotation, "Custodial Interrogation—*Miranda* Rule," 31 A.L.R.3d 565, and Keefe, "Confessions, Admissions and the Recent Curtailment of the Fifth Amendment Protection," 51 Conn. B.J., No. 3, pp. 266, 281 (1977).

reveals no indication of any interrogation of the defendant by the police while in transport to Meriden. The defendant was twice warned of his rights under *Miranda*.[7] The claimed improper comment could reasonably have been anticipated to evoke in the defendant an acquiescence to the officer's observation, which had no relation to the defendant's arrest and charge against him. It was an innocent comment, made in the absence of interrogation, taking it "out of the realm of inadmissible evidence." See *State* v. *Hymore*, 9 Ohio St. 2d 122, 127, 224 N.E.2d 126 (1967), cert. denied, 390 U.S. 1024, 88 S. Ct. 1409, 20 L. Ed. 2d 281 (1968).

Moreover, nothing in the record would indicate that the defendant's statement was not voluntary. See *State* v. *Mascone*, 171 Conn. 500, 510, 370 A.2d 1030 (1976). In *United States* v. *Sanchez*, 449 F.2d 204, 209 (5th Cir. 1971), the court stated: "Voluntary statements of any kind, not in response to custodial interrogation, are not barred by the Fifth Amendment, nor has their admissibility been affected by the *Miranda* decision or its progeny." Cf. *State* v. *Darwin*, 161 Conn. 413, 428, 288 A.2d 422 (1971).[8]

The trial court determined, as a question properly within its province, that the defendant's statement

[7] Pursuant to the provisions of General Statutes § 54-43, the defendant was advised that he had the right to remain silent; that if he talked to any police officer, anything he said could and would be used against him in court; that he had the right to consult with his counsel before he was questioned and during questioning; and that if he wished to answer questions he had the right to stop at any time.

[8] It is axiomatic that neither *Miranda* nor the fifth amendment automatically preclude self-incrimination, whether spontaneous or in response to questions put by law enforcement officers. The fifth amendment does not preclude an individual from speaking voluntarily in matters which may incriminate him; *United States* v. *Monia*, 317 U.S. 424, 427, 63 S. Ct. 409, 87 L. Ed. 376 (1943), for "those com-

was voluntary. See *State* v. *Rosa, supra,* 424; *State* v. *Hassett,* 155 Conn. 225, 230, 230 A.2d 553 (1967). That conclusion is not to be disturbed if it was reasonable under the evidence and not violative of some rule of law. *State* v. *Hassett,* id. There, the court stated (p. 230) that it is well settled that "[a]ll of the surrounding circumstances, including the duration and conditions of the detention, the attitude of the police, and all factors affecting the defendant's powers of self-control are pertinent to whether his statements were the result of a free and unconstrained choice, in other words, were truly voluntary." *Culombe* v. *Connecticut,* 367 U.S. 568, 602, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961); *Ker* v. *California,* 374 U.S. 23, 34, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963). The state of mind which renders a statement involuntary and hence inadmissible is that induced by mistreatment, threats, promises, or physical or mental abuse which deprives an otherwise rational mind of the exercise of its free will and powers of decision and discernment. *State* v. *Rosa, supra,* 424; see 3 Wharton, Criminal Evidence (13th Ed. Torcia) § 671; annot., 23 A.L.R.2d 919, 921; McCormick, Evidence (2d Ed.) § 149 (c). The record is devoid of any indication that the defendant was subjected to this sort of coercion or intimidation at any time. Under these circumstances, we find no error in the trial court's denial of the defendant's motion to suppress.

There is no error.

In this opinion the other judges concurred.

petent and free-willed to do so may give evidence against the whole world, themselves included." *United States* v. *Kimball,* 117 F. 156, 163 (C.C. S.D. N.Y. 1902); accord, *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *Michigan* v. *Tucker,* 417 U.S. 433, 94 S. Ct. 2357, 41 L. Ed. 2d 182 (1974); *Hoffa* v. *United States,* 385 U.S. 293, 87 S. Ct. 408, 17 L. Ed. 2d 374 (1966).