[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On October 28, 1988, the petitioner was found guilty of the charges of sexual assault in the first degree in violation of C.G.S. Sec. 53a-70(a) and unlawful restraint in the first degree in violation of C.G.S. Sec. 53a-95(a) after a jury trial in the Superior Court for the Judicial District of New Haven. On December 15, 1988 he was sentenced to twenty years, execution suspended after twelve and one-half years with five years probation on the sexual assault charge and two years, to run concurrently, on the unlawful restraint charge. He has been in the custody of the respondent at Somers CCI since his sentencing.
The petitioner was represented at his trial by Attorney Patricia Buck Wolf of New Haven, a special public defender appointed after the petitioner's original public defender withdrew because of a conflict of interest.
The petitioner claims, in his Fifth Amended Petition dated May 10, 1990, that he was denied a fair trial because his conviction was obtained in violation of his right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and/or Article First, Section Eight of the Connecticut Constitution. Johnson alleges that Attorney Buck Wolf was ineffective in one or more of the following ways: CT Page 4079
(1) By failing to object to and move to strike evidence of the fact that the complaining witness was seven months pregnant at the time of the incident;
(2) By failing to adequately cross-examine the complaining witness;
(3) By presenting conflicting theories of defense;
(4) Due to the existence of a conflict between counsel's and petitioner's interest;
(5) By failing to pursue a motion to suppress items illegally seized from the petitioner's home, and
(6) By failing to adequately prepare and/or present mitigating evidence at sentencing.
The petitioner claims he was denied a fair trial based upon each ground [of alleged ineffective assistance of counsel] as well as the cumulative effect of the allegations.
The right to counsel, guaranteed by the 6th amendment via the 14th amendment, "is the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14, 25 L.Ed.2d 763,90 S.Ct. 1441 (1970). In interpreting this requirement, the United States Supreme Court has stated:
 "[W]e must take . . . [the 6th amendment's purpose] — to ensure a fair trial — as the guide. The benchmark for judging any claim of ineffectiveness must be whether the counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. . . .
 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings it cannot CT Page 4080 be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."
Strickland v. Washington, 466 U.S. 668, 686-87, 80 L.Ed.2d 674,104 S.Ct. 2052 (1984), reh. denied, 467 U.S. 1267, 82 L.Ed.2d 864,104 S.Ct. 3562 (1984). The Connecticut courts have adopted this analysis judging such claims in state habeas proceedings. Fair v. Warden,211 Conn. 398, 402-404 (1989); Valeriano v. Bronson, 209 Conn. at 85-87. Moreover, the state and federal constitutional standards for review of ineffective assistance of counsel claims are identical. Aillon v. Meachum, 211 Conn. 352, 357 (1989).
"With regard to the performance component of the inquiry, `the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" Id., quoting Strickland,466 U.S. at 687-88; see also State v. Clark. 170 Conn. 273, 283 (1976); Miller v. Angliker, 4 Conn. App. 406, 419 (1985). The Strickland court stated that while prevailing norms of practice are guides in determining what is reasonable, "they are only guides." Strickland v. Washington, 466 U.S. at 688. The court set forth the standard as follows:
 Judicial scrutiny of counsel's performance must be highly deferential. . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' (Citation omitted.). . . .
 A convicted defendant, making a claim of ineffective assistance, must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . . [T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.
Id., at 689-90. Throughout its opinion, the court cautioned that counsel's performance must be examined in light of the particular circumstances as they existed at the time of trial. Id. Finally, the CT Page 4081 court noted that "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." Id., at 693.
The Connecticut Supreme Court has also noted that "it is perfectly consistent for even a lawyer who commits a grievous error — whether due to negligence or ignorance — to be deemed to have provided competent representation. It is possible to leave out a dispositive issue on appeal and nevertheless, to have furnished a petitioner with adequate counsel under the sixth amendment." Valeriano,209 Conn. at 87, quoting Wainwright v. Sykes, 433 U.S. 72, 105 n. 6 (1977) (Brennan, J., dissenting).
Even if counsel is found to have committed a professionally unreasonable error, this does not warrant setting aside the conviction if the error had no effect on the judgment. Strickland,466 U.S. at 691. Except in limited circumstances, such as an actual conflict of interest, the petitioner "must affirmatively prove prejudice." Id. Moreover, it is not enough to show that the error had some "conceivable effect" on the outcome of the proceeding for "[v]irtually every act or omission of counsel would meet that test." Id. Instead, a petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694. Stated another way, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id., at 695.
In the early morning hours of June 6, 1987, New Haven police responded to a complaint that a sexual assault had just taken place in an automobile. The woman gave a description of the vehicle and the license plate number. She gave a physical description of her assailant and described the clothes he was wearing. Within one hour police located the vehicle and took the woman to its location. While the complainant remained in an unmarked police car the police went to the apartment of one Toya Cummings, who confirmed that she owned the car. The petitioner, who was present in the apartment, admitted he had used the car until 6:00 P.M. the night before. He went outside with the police. When he was twenty feet from the unmarked police car the woman identified him as her assailant and he was placed under arrest.
A lengthy statement of facts is not included here. The relevant facts surrounding the incident are detailed in State v. Johnson,22 Conn. App. 477, cert. denied 216 Conn. 817 (1990). Certain additional facts relative to the petitioner's claims have been found by this court after hearing on May 15, 16, 29 and 30, 1990. The petitioner's post trial brief was filed on September 6, 1990.
Sometime in June 1988, the petitioner's trial began in New Haven CT Page 4082 Superior Court. After three jurors had been selected, his public defender became aware of a conflict of interest and was allowed to withdraw from the case. His successor, appointed June 14, 1988, was Attorney Patricia Buck Wolf, a special public defender, who was admitted to practice in 1983 in Connecticut. She had practiced criminal law for about three years; she had some trial experience but had dealt with less than five felony cases. Her most recent employment had been as Fair Housing Officer in Norwalk.
Immediately upon her appointment, she interviewed the petitioner for three hours. She became aware of his alibi defense. He insisted he was with Toya Cummings at the time of the alleged assault. He had been playing cards earlier in the evening. He did not know the complainant, he said. The court granted Buck Wolf's request for a thirty day continuance and the jury panel was discharged. Telephone conferences and letters to the petitioner followed. Prior to Buck Wolf's appearance, on June 13, 1988, a notice of alibi defense had been filed by the petitioner's former attorney, Kevin McDermott. He did so because the petitioner claimed he did not know the woman and was not sexually involved with her. Attorney Buck Wolf's notes of her first meeting with the petitioner refer only to his alibi defense, not a consent defense. In August, Attorney Buck Wolf prepared a memo in preparation for a suppression hearing on the issue of clothing items of the petitioner seized at Cummings' apartment where the petitioner was residing. This motion was withdrawn when Attorney Buck Wolf was shown a consent form purportedly signed by Cummings, the lessee of the apartment, as the police entered her apartment.
Throughout the summer Buck Wolf spoke on the telephone to the petitioner's girlfriend, Toya Cummings, who complained about the petitioner's behavior. Buck Wolf denies giving advice regarding Cummings' interest in a restraining order, although the subject was discussed. Because of her own difficulties with the petitioner, Buck Wolf sought and obtained a competency evaluation of her client pursuant to C.G.S. Sec. 54-56d. Later her client was rearrested for his failure to attend court ordered evaluation appointments. Buck Wolf had suspicions that the petitioner was using controlled substances but he told her only that he suffered a mental problem. She reported her suspicions and the fact that her client had threatened her to the court appointed psychiatrist, Dr. Holzer, who ultimately examined the petitioner and found him to be competent.
On October 12, 1988, Buck Wolf learned that fingerprints of the complainant had been found on the outside of the vehicle the petitioner had admitted driving early in the evening of the incident. (These prints were apparently verified by comparing them with prints obtained from the woman as the result of her arrest on a drug related charge on October 7, 1988).
On October 17, 1988, the complainant testified at the trial. Buck CT Page 4083 Wolf testified the woman could not be located prior to the trial and thus she had not been previously interviewed by the public defender's investigator. The woman was a pathetic looking woman and she had no previous record, according to Buck Wolf. Although Buck Wolf knew the woman had expressed a fear to the police of being labelled a prostitute she did not cross-examine on this point or otherwise attack the credibility of the witness in the light of her recent arrest on drug related charges. Buck Wolf testified she did not cross examine on these issues because her client was opposed to any defense except an alibi defense. She further testified the petitioner would not allow a change of defense even after the fingerprints were found on the vehicle. She indicated that there would have been numerous courtroom outbursts by the petitioner if the defense had been used. The petitioner did interrupt the prosecutor during his examination of the witness, shouting profanities and causing the court to issue a warning to the petitioner about his behavior.
The alibi defense was employed. Toya Cummings testified that the petitioner was with her from 2:30 A.M. on. The assault allegedly occurred at about 3:00 A.M. The petitioner did not testify. He was convicted of both charges. At his sentencing he refused to allow Buck Wolf to call witnesses who might have testified on his behalf in mitigation. He was sentenced to an effective sentence of twelve and one-half years.
On May 29, 1990 the petitioner testified that he did not insist upon an alibi defense in any of his discussions with either of his attorneys. He claimed he did not tell them that he was playing cards with acquaintances that evening. In fact, he said, he had consensual sex with the complainant before purchasing drugs for her. He gave her a couple of bags of cocaine and left, he said. He testified that he told both Attorney Buck Wolf and Attorney McDermott of the sex for drugs proposal and that McDermott mentioned that he, the petitioner, would not be believed because of his prior arrest. (The petitioner had been convicted of sexual assault under the Uniform Code of Military Justice while on active duty with the U.S. Army in West Germany.) He further explained that his alibi witness, Toya Cummings, was truthful when she testified that he was present at her apartment at 2:30 A.M.
In this case, the most serious claim of ineffective assistance among those raised by the petitioner, is the claim that his attorney presented conflicting theories of defense, or, as the evidence indicates, a theory of defense that was, at the time of trial, untenable.
The court has reviewed the evidence, mindful of the admonition of Strickland, that "the challenged action might be considered sound trial strategy," and that counsel's performance must be examined in light of the particular circumstances as they existed at the time of trial. CT Page 4084
Rule 1.2(a) of our Rules of Professional Conduct provides: "A lawyer shall abide by a client's decisions concerning the objectives of representation . . . and shall consult with the client as to the means by which they are to be pursued. . . . In a criminal case, the lawyer shall abide by the client's decision . . . as to a plea to be entered, whether to waive jury trial and whether the client will testify." With the exception of these specified fundamental decisions, an attorney's duty is to take professional responsibility for the conduct of the case, after consulting with his client. Jones v. Barnes, 463 U.S. 745,753 n. 6 (1983).
The dual issues presented are whether the existence of fingerprint evidence, made known to the defense attorney shortly before trial, caused the advancement of an alibi defense at the trial, (thereby precluding a vigorous cross-examination on the issue of the complainant's credibility), to be error so serious as to label counsel's performance as deficient, and, if so, whether the defense was prejudiced thereby. See Strickland, 466 U.S. at 686-87.
Notwithstanding petitioner's testimony to the contrary at his habeas trial, the court is convinced the defense of alibi was proferred at the insistence of the petitioner. It was first introduced by the petitioner when he was represented by Attorney McDermott, who filed the notice of alibi defense on June 13, 1988. The petitioner persisted in denying that he had ever met the complainant or that he had any sexual contact with her throughout the trial process and thereafter until the habeas hearing of May 1990. There is no record anywhere of the petitioner's having mentioned a consent theory of defense, either to his attorneys, his girlfriend, the physician who examined him, or the police who arrested him. Both attorneys deny it. The petitioner consistently refused to cooperate with his trial attorney. She advanced the only defense he would permit, an alibi defense.
At the habeas trial the petitioner presented expert testimony from Attorney William Bloss of the New Haven firm of Grudberg and Jacobs, who had reviewed the transcript of trial, trial file and the file of Attorney Buck Wolf. He testified that, in his opinion, an alibi defense, in a case where fingerprint evidence existed placing the victim in a motor vehicle admittedly occupied by the petitioner, was untenable. He opined that to advance such a defense breached an attorney's duty to represent a client zealously. If an attorney is unable to communicate this fact to a client, he or she should move to withdraw from the case, rather than employ a defense that is untenable, he said. He also thought the testimony of the complainant had enough indicia of implausibility and improbability to make her a real candidate for aggressive cross examination.
The petitioner's claim involves more than an attempt to second CT Page 4085 guess a selected trial strategy because it failed. Such a claim is an insufficient basis from which to find a Sixth Amendment violation. See United States v. Dukes, 727 F.2d 34, 42 (1984). Employing a defense that is untenable must be considered a fundamentally flawed trial strategy. The duty to take responsibility for the conduct of the case rested with Attorney Buck Wolf. Jones, 463 U.S. at 753. If, after consulting with her client, she was prevented by him from presenting a tenable defense, or from simply relying on the presumption of innocence, then she should have moved for permission to withdraw from the case. To proceed with an alibi claim in this case is an abrogation of an attorney's duty to represent a client zealously.
By proferring an alibi defense, albeit at the insistence of her client, no meaningful cross-examination of the complainant was conducted by trial counsel since credibility was not involved. A vigorous cross examination would have questioned the credibility of this witness, who claimed that she was soliciting a ride at 3:00 A.M. to her sister's apartment to borrow money for milk, and who, shortly before the petitioner's trial, was arrested on a drug charge. Failure to cross-examine an adverse witness has generally not been held to constitute inadequate assistance of counsel. State v. Clark, 170 Conn. 273,276 (1976). Strategy often dictates such a tactical decision. But here the strategy, i.e., to employ an alibi defense in the face of damaging fingerprint evidence, was so flawed, and the resulting failure to conduct an adequate cross-examination that called into question the credibility of the victim so serious, that it implicates the petitioner's Sixth Amendment rights, not only affecting his right to effective assistance of counsel but also his right to confront the witnesses against him. See State v. Ortiz, 198 Conn. 220, 223 (1985).
The primary interest secured by the confrontation clause is the right to cross-examination. Ortiz, Id at 223. The Connecticut Supreme Court has consistently recognized the right of an accused, during cross-examination, to place before the jury the fact that criminal charges are pending against the state's witnesses. State v. Lubesky,195 Conn. 475, 482 (1985). "It is well settled law that `[t]he fact that the witness is a defendant in a criminal prosecution . . . creates an interest which affects his credibility.'" (Citations omitted.) State v. Ferrara, 176 Conn. 508, 512 (1979). "For that reason . . . cross examination to show `motive, bias, interest and prejudice is a matter of right and may not be unduly restricted.'" Ortiz, 198 Conn. at 224.
Cross-examination of the complainant in the petitioner's trial did not delve into her recent arrest on a felony drug charge. The cross-examination did not include any mention of her admitted concern that she might be considered a prostitute. It did not question her stated reasons for soliciting a ride from a stranger at 3:00 A.M. (She claimed to have money for cigarettes, but needed a ride to her sister's residence at that hour to borrow money to buy milk for her four children.) By failing to follow the guiding principles of CT Page 4086 Rule 1.2(a) of our Rules of Professional Conduct, and allowing the petitioner to dictate trial strategy as well as fundamental decisions she inadvertently denied him his right to effective assistance of counsel. In this instance, advancing the alibi defense and failing to cross-examine the victim on the issue of her credibility were not reasonable actions, considering the circumstances of this case. Counsel's duty was to make the adversarial testing process work. Strickland, 466 U.S. at 690.
The second prong of the Strickland test requires showing "that counsel's errors were so serious as to deprive the defendant (petitioner) of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 686-687. A petitioner must show that there is "a reasonable probability that . . . the result of the proceeding would be different." Id., at 694. Stated another way, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have a reasonable doubt respecting guilt." Id., at 695. This court concludes the advancement of an alibi defense and the absence of an adequate cross-examination of the complainant were critical oversights, a breakdown in the adversarial process. The breakdown was caused by the conduct of the petitioner but his attorney should have dealt with the problem differently. Counsel's decision to give the petitioner exactly what he demanded is understandable. But in so doing it led to an undermining of the fundamental fairness of the proceeding. Here there is a reasonable probability the outcome would have been different. Strickland, 466 U.S. at 694.
The remaining claims of the petitioner are without factual basis. He has failed to otherwise show counsel's performance was deficient. The petition for writ of habeas corpus is granted.
Potter, J.