JOSEPH I. LIEBERMAN, ATTORNEY GENERAL *v.* RELIABLE REFUSE COMPANY, INC. (13601)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued June 8—decision released August 22, 1989

---

*Steven M. Rutstein,* assistant attorney general, with whom were *Phillip Rosario* and *Robert M. Langer,* assistant attorneys general, and, on the brief, *Clarine Nardi Riddle,* acting attorney general, for the appellant (attorney general).

*Jacob D. Zeldes,* with whom were *Shelley R. Sadin* and, on the brief, *David P. Atkins,* for the appellee (respondent).

GLASS, J. The issue in this case is whether a corporation under investigation for antitrust violations may invoke the privilege against self-incrimination of General Statutes § 52-199[1] to avoid compliance with interrogatories and a subpoena duces tecum issued by the attorney general. The trial court ruled that § 52-199 created a privilege against self-incrimination for corporations and that General Statutes § 35-42 (d)[2] specifically incorporated that privilege into the Connecticut Anti-Trust Act. We find error.

---

[1] General Statutes § 52-199 provides: "(a) In any hearing or trial, a party interrogated shall not be obliged to answer a question or produce a document the answering or producing of which would tend to incriminate him, or to disclose his title to any property if the title is not material to the hearing or trial.

"(b) The right to refuse to answer a question, produce a document or disclose a title may be claimed by the party interrogated or by counsel in his behalf."

[2] General Statutes § 35-42 (d) provides: "No such demand [by the attorney general for documents in connection with antitrust investigations] shall require the submission of any documentary material, the contents of which would be privileged, or precluded from disclosure if demanded in a grand jury investigation."

# I

The Connecticut Anti-Trust Act, General Statutes § 35-24 et seq., bestows upon the attorney general broad powers in connection with the enforcement of antitrust laws. General Statutes § 35-32.[3] The act provides that the attorney general "shall investigate suspected violations and institute proceedings, for any violation of the provisions of" the act. General Statutes § 35-32 (a). In conducting his investigation, the attorney general may serve "upon any person, by subpoena duces tecum, a demand requiring such person

---

[3] "[General Statutes] Sec. 35-32. ATTORNEY GENERAL TO BRING ACTIONS IN THE NAME OF STATE OR AS PARENS PATRIAE. (a) The attorney general, in the name of the state and on behalf of the people of the state, shall enforce the provisions of this chapter. He shall investigate suspected violations and institute proceedings, for any violation of the provisions of this chapter. Such proceedings may pray that such violation be temporarily or permanently enjoined, or otherwise prohibited.

"(b) The attorney general may also, in his discretion, intervene and appear in any proceeding pending before any court, agency, board, or commission in this state in which matters related to this chapter are in issue.

"(c) The attorney general may also, in enforcing the provisions of this chapter, bring an action in the name of the state as (1) parens patriae for persons residing in the state with respect to damages sustained by such persons, or, if the court finds in its discretion that the interests of justice so require, as a representative of a class or classes consisting of persons residing in the state who have been damaged; or (2) parens patriae with respect to damages to the general economy of the state or any political subdivision thereof; provided that such damages shall not be duplicative of those recoverable under subdivision (1) of this subsection.

"(d) The attorney general may also bring a civil action in the name of the state in the district courts of the United States under the federal antitrust laws to recover damages and secure such other relief as provided for in such laws as (1) parens patriae for persons residing in the state with respect to damages sustained by such persons, or, if the court finds in its discretion that the interests of justice so require, as a representative of a class or classes consisting of persons residing in the state who have been damaged; or (2) parens patriae with respect to damages to the general economy of the state or any political subdivision thereof; provided that such damages shall not be duplicative of those recoverable under subdivision (1) of this subsection."

to submit to him documentary material relevant to the scope of the alleged violation." General Statutes § 35-42 (a).[4] The attorney general may also issue subpoenas ad testificandum, notices of deposition and written interrogatories upon any person "as to any matters relevant to the scope of the alleged violations." General Statutes § 35-42 (e) and (h). In the event that any person duly served with a subpoena or interrogatory fails to comply therewith, the attorney general may apply to the trial court for an order requiring compliance. General Statutes § 35-42 (f).

[4] "[General Statutes] Sec. 35-42. SUBPOENA POWER. WRITTEN INTERROGATORIES. CIVIL PENALTIES. FEDERAL AND INTERSTATE COOPERATION. (a) Whenever the attorney general, his deputy, or any assistant attorney general designated by the attorney general, has reason to believe that any person has violated any of the provisions of this chapter, he may, prior to instituting any action or proceeding against such person, issue in writing and cause to be served upon any person, by subpoena duces tecum, a demand requiring such person to submit to him documentary material relevant to the scope of the alleged violation.

"(b) Such demand shall (1) state the nature of the alleged violation, and (2) describe the class or classes of documentary material to be reproduced thereunder with such definiteness and certainty as to be accurately identified, and (3) prescribe a date which would allow a reasonable time to assemble such documents for compliance.

"(c) All documents furnished to the attorney general, his deputy, or any assistant attorney general designated by the attorney general, shall be held in the custody of the attorney general, or his designee, shall not be available to the public, and shall be returned to the person at the termination of the attorney general's investigation or final determination of any action or proceeding commenced thereunder.

"(d) No such demand shall require the submission of any documentary material, the contents of which would be privileged, or precluded from disclosure if demanded in a grand jury investigation.

"(e) The attorney general, his deputy, or any assistant attorney general designated by the attorney general, may during the course of an investigation of any violations of the provisions of this chapter by any person (1) issue in writing and cause to be served upon any person, by subpoena, a demand that such person appear before him and give testimony as to any matters relevant to the scope of the alleged violations. Such appearance shall be under oath and a written transcript made of the same, a copy of which shall be furnished to said person appearing, and shall not be available for public disclosure; and (2) issue written interrogatories prescribing

General Statutes § 52-197 et seq. governs discovery in civil actions.[5] The legislature enacted the provisions critical to this case, §§ 52-198 and 52-199, as part of one act in 1889; Public Acts 1889, c. XXII, §§ 3, 4; see 1 E. Stephenson, Connecticut Civil Procedure § 138 (f); and the pertinent language has not undergone significant revision since then. Section 52-198 presently provides: "If a corporation is party to an action, the opposite party may examine the president, treasurer, secretary, clerk or any director or other officer thereof in the same manner as if he were a party to the suit." Section 52-199 provides: "(a) In any hearing or trial, a party interrogated shall not be obliged to answer a question or produce a document the answering or producing of which would tend to incriminate him, or

a return date which would allow a reasonable time to respond, which responses shall be under oath and shall not be available for public disclosure.

"(f) In the event any person shall fail to comply with the provisions of this section, (1) the attorney general, his deputy, or any assistant attorney general designated by the attorney general, may apply to the superior court for the judicial district of Hartford-New Britain for compliance, which court may, upon notice to such person, issue an order requiring such compliance, which shall be served upon such person; (2) the attorney general, his deputy, or any assistant attorney general designated by the attorney general, may also apply to the superior court for the judicial district of Hartford-New Britain for an order, which court may, after notice to such person and hearing thereon, issue an order requiring the payment of civil penalties to the state in an amount not to exceed five hundred dollars.

"(g) The attorney general shall cooperate with officials of the federal government and the several states, including but not limited to the sharing and disclosure of information and evidence obtained under the purview of this chapter.

"(h) Service of subpoenas ad testificandum, subpoenas duces tecum, notices of deposition, and written interrogatories, as provided herein, may be made by: (1) Personal service or service at the usual place of abode; or (2) by registered or certified mail, return receipt requested, a duly executed copy thereof addressed to the person to be served at his principal place of business in this state, or, if said person has no principal place of business in this state, to his principal office, or to his residence."

[5] See also chapter 8 of the Practice Book.

to disclose his title to any property if the title is not material to the hearing or trial. (b) The right to refuse to answer a question, produce a document or disclose a title may be claimed by the party interrogated or by counsel on his behalf." Section 35-42 (d) of the antitrust statute provides that no demand for documentary material requires the submission of material "the contents of which would be privileged."

The respondent, Reliable Refuse Company, Inc. (Reliable), is engaged in the business of refuse hauling. On March 25, 1987, during an investigation of alleged antitrust violations in Connecticut's refuse hauling industry, the attorney general served interrogatories and a subpoena duces tecum on Reliable. On July 11, 1987, Reliable's counsel informed the attorney general that it would not respond. On August 27, 1987, the attorney general commenced this action pursuant to § 35-42 (f) by filing an application in the trial court for an order requiring Reliable to comply with the interrogatories and subpoena duces tecum. Reliable replied with an answer and special defenses, asserting as its principal defense the statutory privilege against self-incrimination contained in § 52-199. On July 13, 1988, the trial court ruled that § 52-199 provided no "blanket" privilege against self-incrimination, and ordered Reliable to comply with the attorney general's demands "subject to protection afforded Reliable by §§ 52-199 and 35-42 (d), if any, as to individual questions asked or documents requested." Thereafter, Reliable complied with the order of the trial court by interposing its claimed privilege as to each interrogatory and request for production.

On October 4, 1988, the attorney general renewed his application, arguing that § 52-199 did not create a privilege against self-incrimination for corporations, and that the absence of a pending civil action precluded the application of § 52-199. For the purposes of the

application, the attorney general conceded that Reliable's answers to the interrogatories or production of the subpoenaed documents "may . . . tend to incriminate it." On December 8, 1988, the trial court ruled "that section 52-199 created a privilege against self-incrimination in favor of corporations and section 35-42 (d) specifically incorporated that privilege into the Connecticut Anti-Trust Act." The court also found that the hearing on the attorney general's action to compel Reliable to comply with its discovery demands was itself a "hearing" to which the privilege applied. Accordingly, the trial court denied the attorney general's application. The attorney general appealed from this decision to the Appellate Court, and we transferred the appeal to ourselves pursuant to Practice Book § 4023.

## II

On appeal, the attorney general claims that the trial court erred in ruling that § 52-199 applies to corporations, arguing that, despite its use of the word "party," the statute merely incorporates the common law rule making the privilege against self-incrimination available only to natural persons. Reliable contends, however, that the plain language of § 52-199 makes its privilege against self-incrimination available to any "party," including corporations. We agree with the attorney general that § 52-199 does not grant a corporation a privilege against self-incrimination.[6]

---

[6] The attorney general also claims on appeal that, even if it protects corporations, General Statutes § 52-199 does not protect Reliable in the present case, because the attorney general's investigatory demand was made before any civil action was pending. Reliable argues, however, that the proceeding held on the attorney general's motion to compel compliance with its discovery demand was a "hearing" to which the privilege applies. Because we conclude that § 52-199 does not apply to corporations, we do not reach the issue whether the statutory privilege applied to the hearing on the attorney general's motion to compel compliance.

We first note that Reliable has not raised any claim that it has a federal or state constitutional privilege against self-incrimination. It is well established that the fifth amendment privilege against self-incrimination is "limited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records." *United States* v. *White,* 322 U.S. 694, 701, 64 S. Ct. 1248, 88 L. Ed. 1542 (1944); *Braswell* v. *United States,* 487 U.S. 99, 102, 108 S. Ct. 2284, 101 L. Ed. 2d 98 (1988); *Bellis* v. *United States,* 417 U.S. 85, 88, 94 S. Ct. 2179, 40 L. Ed. 2d 678 (1974); *Wilson* v. *United States,* 221 U.S. 361, 31 S. Ct. 538, 55 L. Ed. 771 (1911); see also *Hale* v. *Henkel,* 201 U.S. 43, 74–75, 26 S. Ct. 370, 50 L. Ed. 652 (1906); *State* v. *Biller,* 190 Conn. 594, 600, 462 A.2d 987 (1983) (corporation has no fifth amendment privilege). Moreover, the common law privilege, embodied in the phrase "nemo tenetur seipsum accusare," meaning "no one is bound to accuse himself"; Black's Law Dictionary; was coextensive with the constitutional privilege, and did not apply to "collective groups." 8 J. Wigmore, Evidence (McNaughton Rev. Ed. 1961) § 2259a, p. 354. That the privilege extended to only natural persons is evident from our observation in *State* v. *Ford,* 109 Conn. 490, 496, 146 A. 828 (1929), that "[t]he history of the development of the privilege discloses that the object sought to be obtained thereby was the prevention of the employment of legal process to extract from the *person's own lips* an admission of his guilt which would then take the place of other evidence." (Emphasis added.)

Because there is no constitutional privilege against self-incrimination asserted in this case, our task is limited to determining whether § 52-199 grants such a privilege to corporations. "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language;

and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." General Statutes § 1-1 (a). "When the words of a statute are plain and unambiguous, we need look no further for interpretive guidance because we assume that the words themselves express the intention of the legislature. *Johnson* v. *Manson,* 196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986); *Mazur* v. *Blum,* 184 Conn. 116, 118–19, 441 A.2d 65 (1981)." *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986). We interpret statutory terms by reading them in context and not in isolation. See *Greenwich Trust Co.* v. *Tyson,* 129 Conn. 211, 222, 27 A.2d 166 (1942).

Although "[c]ourts are bound to accept the legislative definition of terms in a statute"; *Toll Gate Farms, Inc.* v. *Milk Regulation Board,* 148 Conn. 341, 347, 170 A.2d 883 (1961); there is no definition of the word "party" or the term "party interrogated" in either the civil discovery sections or the general definitional sections of the general statutes. Further, analyzing the word "party" by its "commonly approved usage" is inappropriate. Ordinarily, the word "party" has a technical legal meaning, referring "to those by or against whom a legal suit is brought . . . the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons." Black's Law Dictionary, citing *Golatte* v. *Mathews,* 394 F. Sup. 1203, 1207 (D.C. Ala. 1975); see *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 474, 217 A.2d 698 (1966) (technical words and phrases include technical legal terms). Thus, the word "party" in isolation ordinarily encompasses "natural or legal persons," and therefore includes corporations. See General Statutes § 1-1 (k) ("person" may include corporation); General

Statutes § 35-25 (b) ("person" in antitrust statute includes natural persons or any legal or commercial entity).

Section 52-199, however, is ambiguous. As noted above, that statute provides that "a party interrogated shall not be obliged to answer a question or produce a document the answering or producing of which would tend to incriminate *him*." (Emphasis added.) The word "him" is a pronoun connoting masculinity. With certain ancient and idiosyncratic exceptions, the English language ordinarily does not use pronouns of gender to refer to inanimate objects or entities, such as corporations. It is significant that the definitional sections of the General Statutes provide that "[w]ords importing the masculine gender may be applied to females and words importing the feminine gender may be applied to males." General Statutes § 1-1 (g). We are unaware of any similar section providing that a pronoun of gender may be applied to an inanimate object or legal entity. Further, because § 1-1 (g) specifically addresses "words importing . . . gender," but does not recognize that a pronoun of gender may refer to an inanimate object or legal entity, we hesitate to infer from the inclusion of "corporation" in the definition of "person" in § 1-1 (k) that the use of the word "him" in § 52-199 was meant to include nonnatural "persons" within the phrase "party interrogated."

Further, in discussing nonstatutory bases of the privilege against self-incrimination, this court has used the term "party" to refer solely to natural persons. "The object of the [privilege against self-incrimination] is to afford to a *party,* called upon to give evidence in a proceeding inter alios, protection against being brought by means of his own evidence within the penalties of the law." (Emphasis added.) *McCarthy* v. *Clancy,* 110 Conn. 482, 489, 148 A. 551 (1930). The use of "party" in *McCarthy* at the very least demonstrates that the

appearance of that word in the context of the privilege against self-incrimination does not decide whether "party" must include nonnatural "persons." We conclude, therefore, that the language of § 52-199 creates an ambiguity as to whether its privilege against self-incrimination applies to corporations.

"When we are confronted . . . with ambiguity in a statute, we seek to ascertain the actual intent by looking to the words of the statute itself; *State* v. *Kozlowski,* [199 Conn. 667, 673, 509 A.2d 20 (1986)]; *Dukes* v. *Durante,* 192 Conn. 207, 214, 471 A.2d 1368 (1984); the legislative history and circumstances surrounding the enactment of the statute; *State* v. *Kozlowski,* supra, 673; *DeFonce Construction Corporation* v. *State,* 198 Conn. 185, 187, 501 A.2d 745 (1985); *State* v. *Parmalee,* 197 Conn. 158, 161, 496 A.2d 186 (1985); *State* v. *Delafose,* [185 Conn. 517, 522, 441 A.2d 158 (1981)]; and the purpose the statute is to serve. *Peck* v. *Jacquemin,* 196 Conn. 53, 64, 491 A.2d 1043 (1985); *Verrastro* v. *Sivertsen,* 188 Conn. 213, 221, 448 A.2d 1344 (1982); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 8, 434 A.2d 293 (1980)." *Rhodes* v. *Hartford,* supra. " 'It is an elementary rule of construction that statutes should be considered as a whole, with a view toward reconciling their separate parts in order to render a reasonable overall interpretation; the application, moreover, of common sense to the statutory language is not to be excluded. . . .' " *Dukes* v. *Durante,* supra, 214.

The attorney general advances a multipronged attack against a construction of § 52-199 that would give corporations a privilege against self-incrimination. He argues that chapter XXII of the 1889 public acts codified, but did not change, the common law rule that the privilege against self-incrimination applied only to natural persons. He also asserts that, since § 52-198 provides for the examination of specified officers of a

"party" corporation "as if [the officer] were a party to the suit," and since a corporation can only "speak" through its agents, § 52-199's privilege against self-incrimination for "the party interrogated" applies only to a corporate agent and not to the corporation itself. He further avers that recognizing a corporate privilege against self-incrimination under § 52-199 would "virtually nullify" his power to investigate alleged antitrust violations by corporations. Reliable argues, however, that the prefatory language of § 52-198, providing that "[i]f a corporation is party to an action," establishes that §§ 52-198 and 52-199 contemplate that the privilege of § 52-199 shall apply to corporations. Further, it asserts that the attorney general's construction would render § 52-199 meaningless, since the constitution ensured and continues to ensure to natural persons a privilege against self-incrimination.

We agree with the attorney general that the language and background of §§ 52-198 and 52-199 fairly suggest that the privilege of § 52-199 codified, but did not expand, the common law and constitutional law limitation that the privilege against self-incrimination can be claimed only by natural persons. Although not dispositive, we find authoritative the following comments regarding the civil discovery statutes in issue in Professor Stephenson's treatise on Connecticut civil practice: "[Public Acts 1889, c. XXII,] is no more nor less than a codification of the rules of equity applicable to discovery, rules which had been incorporated in the motion practice, by reference, in [a prior statute enacted in 1836]. The statute codified but did not change the law." 1 E. Stephenson, Connecticut Civil Procedure (2d Ed.) § 137 (c); see also *Downie* v. *Nettleton,* 61 Conn. 593, 596, 24 A. 977 (1892) (1889 statute "was not designed to enlarge the scope of an equitable discovery principle, but simply to enable a court of law, in administering legal remedies, to exercise a clearly

defined power of a court of equity"). Further, in addition to the ambiguity presented by § 52-199's reference to the "party interrogated" as "him," the language of § 52-198 similarly suggests that the privilege does not apply to corporations.[7] As noted above, § 52-198 states that "[i]f a corporation is a party to an action, the opposite party may examine [a specified officer] in the same manner as if he were a party to the suit." As Reliable concedes, this language implemented the legislature's recognition that the legal entity known as a "corporation" could not speak for itself, but only through its agents. See *Wood* v. *Hartford Fire Ins. Co.,* 13 Conn. 202, 211 (1839). Reliable argues, however, that the language of § 52-198 making a corporation's agent subject to examination "as if he were a party to the suit" does not displace the corporation as the "party" to which the § 52-199 privilege applies. Reliable asserts, instead, that §§ 52-198 and 52-199 establish that both the corporation *and* its examined agents may claim a privilege against self-incrimination in civil actions. We disagree.

Reliable's argument distorts the apparent range of the statutes. If, in enacting § 52-198, the legislature's precise and limited intent had been simply to give recognition to the reality that a corporation may speak only through its agents, its choice of language would be most peculiar. That limited objective would have been met had the statute read: "If a corporation is a party to an action, the opposite party may examine [a specified officer]." In employing the ultimate clause, "in the same manner as if he were a party to the suit," however, it is more reasonable to infer that the legislature intended to affirm that any corporate officer

---

[7] The parties have not suggested that any recorded legislative history surrounding the passage of the act is helpful to our interpretation of General Statutes § 52-199, nor have we discovered any. Cf. *Schieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 479 A.2d 1191 (1984).

could claim the privilege of § 52-199 on his own behalf when summoned to testify or produce documentary material in connection with a suit in which his corporation is a party.

Further, Reliable's sweeping asssertion that §§ 52-198 and 52-199 must be read as extending the privilege to both the corporation's agent *and* the corporation itself is undermined by § 52-199's use of the term "party *interrogated.*" (Emphasis added.) Just as the last phrase in § 52-198 would have been unnecessary to accomplish the limited goal of acknowledging that a corporation may speak and act only through its agents, the word "interrogated" in § 52-199 would be superfluous unless that word is interpreted to modify "party." See *Berger* v. *Tonken,* 192 Conn. 581, 589, 473 A.2d 782 (1984) (there is a presumption that every word in a statute has meaning). It must be remembered here that a "corporation" is but a fictional "person," created by statute and endowed only with those attributes given by statute. See General Statutes c. 599; *Hale* v. *Henkel,* supra, 74–75. A corporation "speaks" only by virtue of personification. Only its agents in reality can be "interrogated," answer questions, and produce documents. The word "interrogated" in § 52-199 obviously contemplates the actual examination conducted pursuant to the civil discovery provisions. We find nothing in the statute suggesting that the word "interrogated" is meant figuratively or metaphysically. The use of that word, therefore, contemplates "the person's own lips." *State* v. *Ford,* supra. Corporations may have figurative "lips," but they do not have anatomical "lips." Reliable's interpretation of "party interrogated," consequently, further personifies corporations in a manner contrary to common sense and without express statutory basis.

The fact that a corporation can be a party to litigation, and is, through its officers, susceptible to the nor-

mal rules of discovery, does not shed any light on whether the corporation has been given a statutory privilege against self-incrimination. There is no presumption in favor of extending personal privileges to corporations, which, as creatures of the state, are subject to pervasive state regulation. Indeed, such a privilege would be so unusual that one would expect it to have been clearly expressed.

Finally, we agree with the attorney general that application of the privilege against self-incrimination of § 52-199 to a corporation would exenterate the attorney general's capacity to investigate alleged antitrust violations by corporations. As Justice Parskey, then a trial court judge, wrote in *Ajello* v. *Hartford Federal Savings & Loan Assn.,* 32 Conn. Sup. 198, 205, 347 A.2d 113 (1975), "[t]he purpose of the state Anti-Trust Act is to enable the attorney general, who is charged with the enforcement of the state's antitrust laws, to obtain documentary information to determine if there has been a violation of the antitrust laws . . . ." The purposes underlying *any* privilege against self-incrimination are extremely attenuated with respect to corporations. As the United States Supreme Court observed in *Hale* v. *Henkel,* supra, 75, "[i]t would be a strange anomaly to hold that a State, having chartered a corporation to make use of certain franchises, could not in the exercise of its sovereignty inquire how these franchises had been employed, and whether they had been abused, and demand the production of the corporate books and papers for that purpose."

We recognize that the attorney general is empowered to investigate any "person," including natural persons, under the antitrust act. There is no doubt, of course, that § 52-199 would apply to natural persons subject to antitrust investigation under the appropriate circumstances. Extension of that privilege to corporations, however, without an unequivocal statutory

basis for doing so, would cripple the attorney general's bona fide efforts to extirpate corporate antitrust violations. We are not persuaded that § 52-199 is intended to so compromise the attorney general's responsibilities and authority under the antitrust act. We are mindful here of the canon of statutory construction that "[w]hen two statutes appear to be repugnant, it is the duty of the court to construe them so that both are operative, if that is reasonably possible." *Toll Gate Farms, Inc.* v. *Milk Regulation Board,* supra, 347. Since § 52-199 may be reasonably construed as applying only to natural persons, our construction of the discovery and antitrust statutes makes both operative without frustrating the discernible legislative intent of either. *State* v. *Ellis,* 197 Conn. 436, 445, 497 A.2d 974 (1985).

Our decision today, of course, does not preclude the legislature from determining, as a matter of policy, that it wishes to extend the benefits of a statutory privilege against self-incrimination to corporations, even though the availability of such a privilege would pose difficulties for the investigatory activities of state regulatory agencies.

There is error, the judgment denying the attorney general's application is set aside and the case is remanded to the trial court for further proceedings consistent with this opinion.

In this opinion PETERS, C. J., SHEA and CALLAHAN, Js., concurred.

COVELLO, J., dissenting. The dispositive issue in this appeal is whether General Statutes § 52-199 provides a statutory privilege against self-incrimination for corporations. An examination of the plain and unambiguous language of this statute and its companions disclose that such a privilege exists. Therefore, I respectfully dissent.

General Statutes §§ 52-197, 52-198 and 52-199 were enacted together in 1889 as part of a new pretrial discovery procedure. 1 E. Stephenson, Connecticut Civil Procedure (2d Ed.) § 138f. All three statutes use the word "party." Section 52-198 provides: *"If a corporation is party to an action,* the opposite party may examine the president, treasurer, secretary, clerk or any director or other officer thereof in the same manner as if he were a party to the suit." (Emphasis added.) Thus, "party" within the meaning of § 52-198 clearly contemplates and includes corporations.

It is inconceivable to me, therefore, that the word "party" in § 52-199 the very next statute in numerical sequence, a statute dealing with the same subject matter, and a statute enacted at the same time, would not also include corporations. In construing a statute, "we must consider the statutory scheme as a whole . . . . Where, as here, more than one statute is involved, we presume that the legislature intended them to be read together to create a harmonious body of law." *Berger* v. *Tonken,* 192 Conn. 581, 589, 473 A.2d 782 (1984).

It is a fundamental tenet of statutory construction that a corporation is a "person." Both General Statutes §§ 1-1 (k) and 35-25 (b) specifically state that a " '[p]erson' [means] . . . corporation." It is also fundamental that a "corporation . . . may sue and be sued . . . ." General Statutes § 33-291 (b). This being so, a corporation is therefore a party within the meaning of the rules of practice that govern these proceedings. Practice Book § 216 (2) states that a " 'party' means (a) a person named as a party in the action . . . ."

Finally, General Statutes § 35-42 (d), the specific antitrust statute here in issue, recognizes the existence of privileges that can act as a limitation on the powers

otherwise conferred upon the attorney general. Section 35-42 (d) provides: "No such demand shall require the submission of any documentary material, *the contents of which would be privileged,* or precluded from disclosure if demanded in a grand jury investigation." (Emphasis added.) While this particular reference is to documentary material, it connotes a legislative recognition that the attorney general's powers under the antitrust act are not to transcend in all events otherwise applicable privileges.

Accordingly, I would affirm the trial court's denial of the attorney general's application to compel the defendant to respond to interrogatories and to comply with the subpoena duces tecum.