[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT
The plaintiff, Robert E. Salvatore, commenced this action seeking a declaratory judgment as to the coverage afforded by Ohio Casualty Insurance policy number BNO(94) 50 43 82 52.[1]
On August 23, 1993 Salvatore was involved in a motor vehicle accident in a motor vehicle which bore the repairer plates of Tadark, Inc., d/b/a Georgetown Foreign Car Service, to whom the aforementioned insurance policy had been issued. In his Complaint CT Page 191 Salvatore seeks a declaration that Ohio Casualty Insurance Company ("Ohio Casualty") is required to defend and indemnify all claims brought against him in connection with that motor vehicle accident.
The defendants have moved for summary judgment in their favor and the plaintiff has also moved for summary judgment in his favor. Each party has submitted affidavits, deposition transcripts and/or other documents in support of their respective positions. However, the material facts are not in dispute. Each party contends that the insurance policy in question when construed in connection with the facts presented supports their position.
Factual Background
On August 23, 1993 Robert Salvatore was a long time customer of Georgetown Foreign Car Service ("Georgetown"), which was a trade name of Tadark, Inc., the named insured under the policy at issue. Robert Lamorte was the vice president and principal shareholder of Tadark, Inc. Georgetown did repair and restoration work to a 1976 BMW automobile owned by Salvatore. Lamorte agreed that he would forego immediate payment for the repairs in exchange for Salvatore's agreement to allow him to share in the proceeds realized from the sale of the vehicle. That agreement was memorialized in a document dated August 18, 1993 which provided:
 I, Robert L. Salvatore, hereby agree to a partnership with Bob Lamorte, owner of Georgetown Foreign Car Service.
 Agreement as follows: Bob Lamorte will make all repairs on vehicle, a 1976 BMW 3.0 CSI, ID# 4341390 at his expense and help in sale of vehicle and transportation of vehicle for purpose of sale. Asking price is $29,000. Any monies over $20,000 which is Robert Salvatore's asking price for vehicle in as-is condition are to go to Bob Lamorte upon sale of vehicle.
 I, Robert Salvatore, reserve the right to stop sale of vehicle at any time. At which time Robert Salvatore must pay Bob Lamorte for service, time, parts and labor made on this vehicle.
On August 18, 1993, Lamorte picked up the BMW in question from Salvatore's garage, put Georgetown's repairer plate on the vehicle, and drove the vehicle to Georgetown. Lamorte did work on CT Page 192 the vehicle during the subsequent week and agreed to go with Salvatore on August 23, 1993 to Brewster, New York, to show the vehicle to a prospective buyer.
When August 23rd arrived, Lamorte was unable to leave his business to go to New York, so he asked Salvatore to drive the vehicle to New York alone. Lamorte informed Salvatore that Salvatore would be covered by the insurance provided to Georgetown because Georgetown's repairer plates were on the vehicle. Thereafter, Salvatore drove the BMW to the home of a friend in Brewster, New York, where he had arranged to show the car to the prospective buyer. The buyer never kept the appointment to see the vehicle. Thereafter Salvatore started to drive the BMW back to Connecticut and was involved in a motor vehicle accident with Richard Hartz. Hartz subsequently sued Salvatore. Thereafter, on November 9, 1993 Salvatore received a letter from The Ohio Casualty Insurance Company informing him that its policy did not provide him any coverage with respect to the motor vehicle accident with Hartz.
The policy contains the following relevant provisions:
SECTION II — LIABILITY COVERAGE
 A. Coverage
 We will pay all sums an "insured legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations."
 1. WHO IS AN INSURED
 a. The following are "insureds" for covered "autos":
(1) You for any covered "auto."
 (2) Anyone else while using with your permission a covered "auto" you own, hire or borrow. . . .
The insurance policy further provides in "Item Two — Schedule of Coverages and Covered Autos" that there are three auto types which are "covered autos" under the policy, types "27, 28 and 29". Section I (A) of the Garage Coverage Form defines those number types. A vehicle of a "28" type is: CT Page 193
 HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow.
The Repair Plate Endorsement of the policy defines "covered autos" as:
 B. Any "auto" you operate while used with plates described in this endorsement is a covered "auto", but only while:
1. Used in your garage business; . . .
2. Used by you or your full-time employees in personal affairs; or
3. Loaned to a customer; . . .
 b. While an "auto he or she owns is left for your service or repair; . . .
Ruling
In the recent case of Hansen v. Ohio Casualty Ins. Co.,239 Conn. 537, 542, 543, ___ A.2d ___ (1996), the Connecticut Supreme Court stated:
 "Under well established rules of construction, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. Streitweiser v. Middlesex Mutual Assurance Co., 219 Conn. 371, 375, 593 A.2d 498
(1991). This rule of construction may not be applied, however, unless the policy terms are indeed ambiguous. Kelly v. Figueiredo, [223 Conn. 31, 35, 610 A.2d 1296 (1992)] supra, 37."
In Ceci v. National Indemnity Co., 225 Conn. 165,622 A.2d 545 (1993), to which the Court considered its decision in Hansen
to be a sequel, the Court stated:
 "It is a basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters, and that ambiguities in contract documents are resolved against the party responsible for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." Cody v. Remington Electric Shavers, supra, 497.
The premise behind the rule is simple. "`The party who actually does CT Page 194 the writing of an instrument will presumably be guided by his own interests and goals in the transaction. He may choose shadings of expression, words more specific or more imprecise, according to the dictates of these interests.'" Simses v. North America Co. for Life Health Ins., 175 Conn. 77, 85, 394 A.2d 710 (1978), quoting Ravitch v. Stollman Poultry Farms, Inc., 165 Conn. 135, 146 n. 8, 328 A.2d 711
(1973). "A further, related rationale for the rule is that `[s]ince one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity are resolved in favor of the latter.'" Simses v. North American Co. for Life Health Ins., supra, quoting 4 S. Williston, Contracts (3d Ed. Jaeger 1961) 621, p. 760-61.
225 Conn. at 173, 174.
The defendant argues that the "you" mentioned in the portions of the policy referred to above is a corporation, Tadark, Inc., that corporation did not operate the vehicle at the time of the collision, and, therefore, there is no coverage. That interpretation is clearly nonsensical, because a corporation cannot operate a vehicle, give permission to operate a vehicle or borrow a vehicle. A corporation must act through its agents.Lieberman v. Reliable Refuse Co., 212 Conn. 661, 563 A.2d 1013
(1989).
Salvatore is an insured under either the general liability portion of the policy because he was operating a covered auto with the permission of Tadark, Inc. given by its principal, Lamorte, and/or under the Repairer Plate portion of the policy in that he was the agent of Tadark, Inc. operating the vehicle bearing the repairer plates at the time of the collision. To the extent the policy does not clearly establish the foregoing, it is at the very least ambiguous, and, therefore, the policy must be construed in favor of the insured, who intended and reasonably expected that the policy cover Salvatore.
Based on the foregoing, the Motion for Summary judgment filed by the plaintiff is granted, the Motion for Summary Judgment filed by the defendants is denied. Judgment is entered in favor of the plaintiff as against Ohio Casualty Insurance Company. Judgment is entered in favor of the American Fire Casualty Company, and the West American Insurance Company because they did not issue the policy in question.
By the court, CT Page 195
Aurigemma, J.