******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* NICHOLAS M.
MENDITTO
(SC 19272)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued October 20, 2014—officially released March 24, 2015*

*Naomi T. Fetterman*, with whom was *Aaron J. Romano*, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Andrew Reed Durham*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. Connecticut's erasure law, part I of chapter 961a of the General Statutes, provides in relevant part that "[w]henever any person has been convicted of an offense . . . and such offense has been decriminalized subsequent to the date of such conviction," that person may petition the Superior Court for an order of erasure directing that all public records pertaining to the conviction be destroyed. General Statutes § 54-142d. In 2011, the legislature enacted No. 11-71 of the 2011 Public Acts (P.A. 11-71), which was codified as General Statutes § 21a-279a and changed the penalty for possessing less than one-half ounce of marijuana from a potential term of imprisonment and/or a large fine to merely a fine of $150 for a first offense, and a fine of between $200 and $500 for subsequent offenses. P.A. 11-71, § 1 (a). The question presented by this certified appeal is whether P.A. 11-71 decriminalized the possession of less than one-half ounce of marijuana for purposes of § 54-142d. We conclude that it did and, accordingly, we reverse in part the judgment of the Appellate Court.

We assume familiarity with the underlying facts and procedural history, which are set forth in the opinion of the Appellate Court. See *State* v. *Menditto*, 147 Conn. App. 232, 236–38, 80 A.3d 923 (2013). In brief, in 2009, the defendant, Nicholas M. Menditto, entered pleas of guilty of two charges of possession of a controlled substance in violation of General Statutes (Rev. to 2009) § 21a-279 (c),[1] arising from his possession of approximately 0.15 and 0.01 ounces of marijuana on two different occasions. The trial court imposed a total effective sentence of two years incarceration, execution suspended, and eighteen months probation. In March, 2011, during his probationary period, the defendant again was arrested and charged with, among other things, possession of a controlled substance (in this case, less than 0.04 ounces of marijuana) in violation of General Statutes (Rev. to 2011) § 21a-279 (c). As a result of that arrest, the defendant also was charged, in April, 2011, with violation of his probation on the two previous marijuana convictions, pursuant to General Statutes § 53a-32.

After P.A. 11-71 took effect on July 1, 2011, the defendant (1) petitioned for the destruction of the records of his two 2009 convictions, pursuant to § 54-142d, and (2) moved to dismiss the violation of probation charges and the 2011 controlled substance charges. The trial court, *Baldini, J.*, denied the defendant's various petitions and motions to dismiss,[2] and the Appellate Court affirmed. *State* v. *Menditto*, supra, 147 Conn. App. 246. We granted certification, limited to the following question: "Did the Appellate Court properly hold that, after the passage of [P.A. 11-71], the possession of less than one-half ounce of marijuana was not 'decriminalized'

within the meaning of . . . § 54-142d?" *State* v. *Menditto*, 311 Conn. 911, 84 A.3d 880 (2014).

Whether P.A. 11-71 decriminalized the possession of less than one-half ounce of marijuana for purposes of the erasure statute is a question of law that we review de novo. See *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 150, 12 A.3d 948 (2011). Because the certified issue presents a question of statutory interpretation, our analysis is guided by General Statutes § 1-2z, the plain meaning rule. In seeking to determine the meaning of a statute, § 1-2z directs us first to consider the text of the statute itself and its relationship to the broader statutory scheme. "If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z. "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *McCoy* v. *Commissioner of Public Safety*, supra, 150.

We begin with the text of the erasure statute. Section 54-142d provides in relevant part: "Whenever any person has been convicted of an offense in any court in this state and such offense has been *decriminalized* subsequent to the date of such conviction, such person may file a petition with the [S]uperior [C]ourt . . . for an order of erasure, and the Superior Court or records center of the Judicial Department shall direct all police and court records and records of the state's or prosecuting attorney pertaining to such case to be physically destroyed." (Emphasis added.)

The parties both agree that the purpose of the statute is to allow people who have been convicted of a criminal offense to erase their criminal records in the event that the legislature later decriminalizes such conduct. Both parties also maintain that the meaning of § 54-142d is plain and unambiguous. Nevertheless, they disagree as to the scope and meaning of the key term "decriminalized." The defendant contends that any offense that is no longer a crime has, by definition, been "decriminalized." He argues that former crimes that have been reclassified as violations, such as possession of less than one-half ounce of marijuana, are, therefore, subject to erasure. By contrast, the state contends, and the Appellate Court concluded, that an offense is decriminalized for the purposes of the erasure statute only when the relevant conduct has been fully legalized, and is no longer subject to any punitive sanctions. We agree with the defendant.

The term "decriminalized" is not defined in § 54-142d, and it does not appear elsewhere in the General Statutes. Accordingly, General Statutes § 1-1 (a) directs that we construe the term according to its commonly

approved usage, mindful of any peculiar or technical meaning it may have assumed in the law. We may find evidence of such usage, and technical meaning, in dictionary definitions, as well as by reading the statutory language within the context of the broader legislative scheme. See *Rainforest Cafe, Inc.* v. *Dept. of Revenue Services*, 293 Conn. 363, 374–75, 977 A.2d 650 (2009); *Young* v. *Marx*, 24 Conn. App. 81, 84, 585 A.2d 1253 (1991).

Because we seek to discern the intent of the legislature in 1983, when it enacted § 54-142d, dictionaries in print at that time are especially instructive. See *R.T. Vanderbilt Co.* v. *Continental Casualty Co.*, 273 Conn. 448, 463, 870 A.2d 1048 (2005); *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 539, 791 A.2d 489 (2002). A contemporaneous edition of Black's Law Dictionary defined "[d]ecriminalization" as "[a]n official act generally accomplished by legislation, in which an act or omission, formerly criminal, is made non-criminal and without punitive sanctions." Black's Law Dictionary (5th Ed. 1979) p. 371. That same dictionary defined "[l]egalize," by contrast, as "[t]o make legal or lawful. . . . To confirm or validate what was before void or unlawful. To add the sanction and authority of law to that which before was without or against law." (Citation omitted.) Id., p. 805. Black's Law Dictionary thus offers some support to both parties' interpretations. It suggests that decriminalization is something short of full legalization, but also that decriminalization may entail the absence of punitive sanctions.

Merriam-Webster's Collegiate Dictionary is more illuminating. In 1983, that dictionary defined "decriminalize" as follows: "to remove or reduce the criminal classification or status of; esp[ecially]: to repeal a strict ban on while keeping under some form of regulation [e.g.] the possession of marijuana . . . ." Merriam-Webster's Collegiate Dictionary (9th Ed. 1983) p. 331. It is clear from this definition that, at the time the erasure statute was enacted, reducing the penalties for marijuana possession, while retaining its contraband status, would have fallen squarely within the core meaning of the term "decriminalize." Moreover, Merriam-Webster's traces that meaning of the term to 1969, suggesting that it was well established by the time the legislature drafted § 54-142d. Id.

The Oxford English Dictionary is also instructive. It indicates that the term "decriminalize" came into widespread use in the 1970s, and that examples of its early use primarily centered around proposed legislative decriminalization of conduct such as illegal drug use and prostitution. See 4 Oxford English Dictionary (2d Ed. 1991) p. 352. Accordingly, we conclude that, during the time period in question, "decriminalize" was used as a legislative term of art, and that it had "acquired

a peculiar and appropriate meaning in the law . . . ." General Statutes § 1-1 (a). It is well established that, to construe technical legal terms, we look for evidence of their familiar legal meaning in a range of legal sources, including other statutes, judicial decisions, and the common law. See *Standard Oil Co.* v. *United States*, 221 U.S. 1, 59, 31 S. Ct. 502, 55 L. Ed. 619 (1911); *State* v. *Dupigney*, 295 Conn. 50, 58–60, 988 A.2d 851 (2010); *Lieberman* v. *Reliable Refuse Co.*, 212 Conn. 661, 669–70, 563 A.2d 1013 (1989).

Legislative initiatives in other jurisdictions demonstrate that, in the years leading up to the adoption of Connecticut's erasure statute, the term "decriminalization" commonly referred to reducing the penalties for, without fully legalizing, marijuana possession. In 1977, for example, a select committee of the United States House of Representatives conducted hearings entitled "Decriminalization of Marihuana," during which the committee considered whether federal penalties for marijuana possession should be reduced. See generally Decriminalization of Marihuana: Hearings before the Select Committee on Narcotics Abuse and Control, House of Representatives, 95th Cong., 1st Sess. (March 14, 15 and 16, 1977). The committee referred to states such as California and Oregon, which had reduced the penalty for possession of small quantities of the drug to maximum $100 fines during the mid-1970s, as having "adopted decriminalization laws." Id., pp. 1, 3. The committee further observed that "[t]he issue here is reduction of penalty, not promotion of use, even though some may logically contend that increased use would be a natural result of decriminalization," and opined that "[t]here are, in reality, only three possible options on this subject: one, to continue criminal penalties; two, to decriminalize the user; or, three, to legalize the use of marihuana." Id., p. 2. It is clear, then, that Congress understood decriminalization to mean something short of full legalization. Specifically, conduct was viewed as having been decriminalized when criminal sanctions were replaced by civil fines. New York, which downgraded marijuana possession (up to twenty-five grams) from a crime to a violation in 1977, likewise characterized that change as a "decriminalization" of the drug. See N.Y. Penal Law § 221.00, commentary (McKinney 2008) pp. 321–24. We thus agree with the defendant that at the time our legislature enacted the erasure statute the prevailing use of the term "decriminalize" was with respect to conduct for which criminal sanctions had been replaced by civil fines, rather than fully legalized.

This conclusion finds support in Connecticut's broader statutory scheme, as modified over time by the legislature.[3] See *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 123, 830 A.2d 1121 (2003) ("[b]ecause the legislature is always presumed to have created a harmonious and consistent

body of law, the proper construction of any statute must take into account the mandates of related statutes governing the same general subject matter" [internal quotation marks omitted]). In 1969, at the time the legislature revised and codified the Penal Code, it enacted General Statutes § 53a-24 (a), which delineates the various categories of illegal conduct. At that time, the statute provided in relevant part: "The term 'offense' means any crime or violation which constitutes a breach of any law . . . for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, except one that defines a motor vehicle violation. The term 'crime' comprises felonies and misdemeanors. Every offense which is not a 'crime' is a 'violation.' . . ." General Statutes (Supp. 1969) § 53a-24 (a). The statute thus distinguished between three categories of illegal conduct: crimes, offense violations, and nonoffense motor vehicle violations. Although the second category, offense violations, was not defined in that statute, General Statutes (Supp. 1969) § 53a-27 indicated that such violations encompassed any offenses for which the only authorized sentence was a fine. See also *McCoy* v. *Commissioner of Public Safety*, supra, 300 Conn. 173.

In 1975, the legislature created a fourth category of illegal conduct: infractions of the law. See generally Public Acts 1975, No. 75-577 (P.A. 75-577). Public Act 75-577 classified the violation of most local ordinances, regulations, and bylaws as infractions, and also reclassified many motor vehicle violations as infractions. P.A. 75-577, §§ 6, 7, 9, 11–125. Procedures were established whereby a person alleged to have committed an infraction could forgo a hearing and simply send payment to the Court of Common Pleas;[4] P.A. 75-577, § 1; although anyone so accused also retained the right to plead not guilty and request a trial subject to the "practice, procedure, rules of evidence and burden of proof applicable in criminal proceedings . . . ." P.A. 75-577, § 2, codified at General Statutes § 51-164n (h). Public Act 75-577, § 8 (a), also amended § 53a-24 (a) by adding the following language, indicated in capital letters, to make clear that infractions, like motor vehicle violations, do not constitute criminal offenses: "The term 'offense' means any crime or violation . . . except one that defines a motor vehicle violation OR IS DEEMED TO BE AN INFRACTION." Consistent with that amendment, P.A. 75-577 also introduced new statutory language, subsequently codified at General Statutes (Rev. to 1977) § 51-164n (a), providing that "the commission of an infraction shall be deemed not to be an offense within the meaning of section 53a-24 of the [G]eneral [S]tatutes." P.A. 75-577, § 2 (a).

Accordingly, at the time the legislature enacted the erasure statute, § 54-142d, in 1983, the General Statutes recognized four categories of illegal conduct: (1) crimes; (2) offense violations; (3) nonoffense motor vehicle violations; and (4) infractions. General Statutes

§ 53a-24 (a). In their briefing, the parties assumed that P.A. 11-71 changed the status of possession of less than one-half ounce of marijuana from a crime to an offense violation, and they focused their argument on the question whether such a change constitutes a decriminalization for the purposes of § 54-142d. It was also on that basis that the Appellate Court decided the appeal, concluding that such a change does not qualify as decriminalization.

Prior to oral argument before this court, however, we brought to the attention of the parties the fact that the legislative scheme has changed in significant and material respects since 1983. In light of those changes, which the parties had an opportunity to address at argument, we conclude that the legislature unambiguously intended to decriminalize possession of less than one-half ounce of marijuana, and that the defendant is, therefore, entitled to erasure of the records of his 2009 convictions pursuant to § 54-142d.

The relevant changes to the statutory scheme commenced in the early 1990s, when the legislature thrice amended § 51-164n to provide that certain less serious offense violations would henceforth be governed by the same procedural rules as are infractions. See Public Acts 1990, No. 90-213, § 10; Public Acts, Spec. Sess., May, 1992, No. 92-6, § 74; Public Acts 1993, No. 93-141, § 3 (P.A. 93-141). By 1993, most violations subject to a maximum penalty of no more than a $500 fine had been placed under the jurisdiction of the Centralized Infractions Bureau and were treated, procedurally, as infractions. See General Statutes (Rev. to 1995) § 51-164n (a) and (b). Significantly, the legislature also amended what is now § 51-164n (e) to clarify that not only infractions but also any violation now governed by chapter 881b "shall not be deemed to be an offense within the meaning of section 53a-24." P.A. 93-141, § 3 (e). It is clear, then, that by 1993 the legislature had reclassified illegal acts into four new categories: (1) crimes; (2) major violations, which are deemed to be offenses and for which the maximum penalty is typically a fine of more than $500;[5] (3) minor civil violations,[6] which typically carry a maximum penalty of no more than a $500 fine; and (4) infractions. See General Statutes (Rev. to 1993) § 53a-24.

When the legislature enacted P.A. 11-71 in 2011, it reduced the maximum penalty for a first offense of possession of less than one-half ounce of marijuana from a fine of up to $1000 and/or imprisonment of up to one year to a fine of $150, and reduced the penalty for subsequent offenses from a fine of up to $3000 and/ or imprisonment of up to five years to a fine of between $200 and $500. P.A. 11-71, § 1. It did so by limiting the scope of conduct that constituted criminal possession of marijuana under § 21a-279 and enacting a new statute imposing fines for the conduct excluded from the scope

of § 21a-279. See General Statutes § 21a-279a. The legislature then added that new statutory provision proscribing possession of less than one-half ounce of marijuana to the list of minor civil violations in § 51-164n (b); P.A. 11-71, § 6; which are deemed not to be offenses pursuant to § 51-164n (e). The question we must resolve, then, is whether changing the status of an illegal act from a crime to a *minor civil violation* constitutes decriminalization for the purposes of the erasure statute.[7]

As we have discussed herein, reducing the maximum penalties for marijuana possession from imprisonment to relatively small, noncriminal fines was commonly referred to as "decriminalization" at the time the legislature enacted the erasure statute and, indeed, that appears to have been the primary context in which the term was used in the 1970s and early 1980s. It is clear, moreover, that Connecticut's legislature did not intend persons convicted of minor civil violations to suffer the negative repercussions associated with having a criminal record. Section 51-164n (e), for example, provides that a summons for the commission of a minor civil violation, including a violation of § 21a-279a (a), "shall not be deemed to be an arrest . . . ." Similarly, payment of any fines imposed therefor "shall be inadmissible in any proceeding, civil or criminal, to establish the conduct of the person . . . ." General Statutes § 51-164n (c). Moreover, § 53a-24 (a) provides that even with respect to more serious offense violations, "[c]onviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense."

Nor can we perceive any reason why the legislature would have intended that criminal records be retained for conduct that is no longer criminal and that would not lead to the creation of criminal records if committed today. Following the enactment of P.A. 11-71, possession of less than one-half ounce of marijuana now holds the same legal status as such minor civil violations as maintaining state records using unapproved paper, ink, or loose-leaf binders. General Statutes §§ 1-9 through 1-11.[8] See General Statutes § 51-164n (b). This is not the sort of conduct to which society attaches substantial moral opprobrium, or which one takes into consideration when making important decisions such as hiring an employee, for which criminal records are often consulted. The legislature has determined that such violations are to be handled in the same manner as civil infractions, such as parking violations. The state has failed to suggest any plausible reason why erasure should be denied in such cases.

Furthermore, possession of small quantities of marijuana is now unique even among minor civil violations, in that a person who pleads not guilty to an alleged violation is subject to a *lower* standard of proof at trial. Section 51-164n (i) provides that in any trial for the

alleged violation of § 21a-279 (a), the burden of proof shall be by the preponderance of the evidence, rather than the higher criminal standard—proof beyond a reasonable doubt—that governs most other violations and infractions. Whatever the legislature's rationale for so providing, subjecting marijuana possession to a civil burden of proof provides strong evidence that the legislature deems it to have been decriminalized.

Lastly, we note that during the relevant time period, when the legislature wanted to refer to the full legalization of a formerly criminal act, it used the term "legalize" rather than "decriminalize." During the late 1970s, for example, the legislature added several references to "legalized gambling" to the tax code. See, e.g., General Statutes § 12-561 ("commissioner may . . . prohibit any employee of the department from engaging . . . in any form of legalized gambling activity"); General Statutes § 12-564 (b) ("commissioner shall conduct studies concerning the effect of legalized gambling"). If the legislature had intended to restrict the availability of erasure to those former crimes that have been fully legalized, as the state contends, we presume that it would have used the term "legalize" in crafting the erasure statute as well.

For these reasons, we conclude that the trial court improperly denied the defendant's petitions to erase and destroy the records of his two 2009 marijuana convictions, and we reverse the judgment of the Appellate Court insofar as it held to the contrary. We affirm the judgment of the Appellate Court in all other respects.[9]

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to remand the case to the trial court for further proceedings consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

[1] General Statutes (Rev. to 2009) § 21a-279 (c) provides in relevant part: "Any person who possesses . . . less than four ounces of a cannabis-type substance . . . for a first offense, may be fined not more than one thousand dollars or be imprisoned not more than one year, or be both fined and imprisoned; and for a subsequent offense, may be fined not more than three thousand dollars or be imprisoned not more than five years, or be both fined and imprisoned."

[2] The defendant thereafter entered conditional pleas of nolo contendere as to the March, 2011 possession charge and the two violation of probation charges, pursuant to General Statutes § 54-94a. The trial court, *Mullarkey, J.*, accepted the pleas and rendered judgments of guilty, fining the defendant $150, and terminating his probation.

[3] Although both parties appeal at times to the legislative histories of the erasure statute and—in the case of the defendant—P.A. 11-71, we ultimately conclude that the statutory scheme is not ambiguous with respect to the decriminalization of marijuana. Accordingly, we may not consider such evidence. See General Statutes § 1-2z.

[4] Chapter 881b of the General Statutes, which codified the new provisions governing infractions, was subsequently amended to create a Centralized Infractions Bureau to handle such payments. See Public Acts 1985, No. 85-446.

[5] Examples of major violations include the failure of a driver to exercise caution resulting in the injury or death of the operator of an emergency vehicle; General Statutes § 14-283b; failure to report hazardous oil spills;

General Statutes § 22a-450; and violation of various consumer protection statutes. See, e.g., General Statutes § 53-422.

[6] A number of the violations governed by § 51-164n are expressly identified as subject to a "civil penalty"; see, e.g., General Statutes §§ 13a-140 (b), 19a-87 and 19a-425; and the legislative history of P.A. 75-577 indicates that the legislature viewed the conduct governed by this section as "civil offenses." See, e.g., 18 H.R. Proc., Pt. 10, 1975 Sess., p. 4679, remarks of Representative James T. Healey; see also General Statutes § 54-82b (a) ("[t]here is no right to trial by jury . . . in any matter involving violations payable through the Centralized Infractions Bureau"); *McCoy* v. *Commissioner of Public Safety*, supra, 300 Conn. 159 ("the legislature intended to exclude only breaches with relatively minor penalties from the definition of offense").

[7] As noted, the Appellate Court instead addressed the question, which had been briefed by the parties, whether changing the status of an illegal act from a crime to an *offense violation* constitutes decriminalization. The Appellate Court held that it does not, reasoning that because § 54-142d refers to the decriminalization of an "offense," rather than a "crime," decriminalization can only occur where the legislature determines that illegal conduct is no longer an offense of any sort. *State* v. *Menditto*, supra, 147 Conn. App. 243. In light of our conclusion that possession of less than one-half ounce of marijuana is no longer an offense, however, we need not decide whether the reasoning of the Appellate Court was sound.

[8] Other examples of minor civil violations that the legislature has classified together with possession of less than one-half ounce of marijuana include: failure of a selectman to draw a treasury order in duplicate; General Statutes § 7-13; violation of record keeping regulations by a registrar of vital statistics; General Statutes § 7-41; deceiving a teacher about the age of a child; General Statutes § 10-198; failure of a school board to provide or timely renew a United States flag in a classroom; General Statutes § 10-230; failure of selectmen to timely open a highway blocked with snow upon the request of six taxpayers; General Statutes § 13a-107; placing stones, rubbish, or waste on cleared land abutting a highway; General Statutes § 13a-139; failure of a commercial vehicle to carry proper emergency lights; General Statutes § 14-97a; operating a motor vehicle in a manner so as to frighten a horse ridden on a public highway; General Statutes § 14-293b; violation of the parking regulations at a facility operated by the Department of Children and Families; General Statutes § 17a-24; failure of medical personnel to administer eye drops to a newborn infant with inflamed eyes; General Statutes § 19a-219; refusal of a smallpox vaccination; General Statutes § 19a-222; violation of cemetery bylaws; General Statutes § 19a-297; sale of inadequately labeled print butter; General Statutes § 21a-21; failure to register a bee hive with the state entomologist; General Statutes § 22-89; failure to provide adequate toilet accommodations for both sexes on a tobacco plantation; General Statutes § 31-38; failure of one performing a marriage to timely return a marriage license certificate; General Statutes § 46b-34; and knowingly vending grass seed containing seed of the Canada thistle. General Statutes § 53-321. See General Statutes § 51-164n (b).

[9] In their briefs to this court, the parties also engaged in some argument regarding the propriety of the trial court's denial of the defendant's motions to dismiss his violation of probation proceedings and the 2011 controlled substance charges. We emphasize, however, that the Appellate Court affirmed the trial court in both respects, and, in granting certification, we declined to review any claims of error arising from those determinations. Moreover, at oral argument, both parties agreed that those issues have not been adequately briefed and are not properly before this court. Accordingly, the present decision should not be construed as calling into question the propriety of the denial of the defendant's various motions to dismiss.

---